

**RECEIVED JUL 18 2012 CHAMBERS OF COLLEEN McMAHON**

**MARIN/GOODMAN, LLP**
*Attorneys At Law*

USDS SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/19/12

NEW JERSEY OFFICE
10 BUCKY LANE
VERNON, NEW JERSEY 07462
TEL (973) 921-0515
FAX (973) 921-0580

500 MAMARONECK AVENUE
SUITE 501
HARRISON, NEW YORK 10528
TEL (212) 661-1151
FAX (212) 661-1141

RODRIGO ARMAND, JR.
*ASSOCIATE*
RARMAND@MARINGOODMAN.COM

## MEMO ENDORSED

July 18, 2012

<u>Via Facsimile To: (212) 805-6326</u>
The Honorable Colleen McMahon
United States District Court
Southern District of New York
500 Pearl Street, Room 1350
New York, New York 10007

*[Handwritten endorsement: 7/18/2012 Look, this case is CLOSED. It has been settled. If plaintiff wants to bring a new action, nine to reopen this one. There is a proper way of doing that. I do not expect letters in closed cases.]*

Re: Keisha Jones v. Bilateral Credit Corp., LLC, et al.
U.S. District Court, Southern District of New York
Index No.: 11 CIV 9136 (CM)
Our Index No.: 2227.00141

Dear Judge,

    This office represents Defendant, Bilateral Credit Corp., LLC ("Bilateral"), in the above-captioned matter. We write in response to Plaintiff's July 17, 2012 Letter wherein she accuses Bilateral of failing to fulfill its obligations under the settlement agreement executed between the two parties. Plaintiff's contentions are false. Bilateral has fulfilled all of its obligations under the settlement agreement.

    We realize that it is not generally the case that the Court gets mired in the details of settlements between the parties, the point of settlement being to allow the parties to come to their own agreement. However, under the present circumstances, we provide the following in order to give the Court the assurance that there is nothing improper occurring with regard to the settlement agreement between Plaintiff and Bilateral. Though we do not include the full settlement agreement herein, should Your Honor deem it necessary for us to do so, we shall promptly comply. Otherwise, we will only list the provisions it contains to the extent necessary to address the issue raised by Plaintiff's letter.

*[Signature: Colleen McMahon]*

0000083963M038



*Attorneys At Law*

July 18, 2012
Page 2 of 5

**The Settlement Negotiation**

By way of background, Bilateral is not the owner of the debt at issue in this action. Rather, it was hired by the debt owner to perform debt collection services. In the months prior to the commencement of the present action, Plaintiff had been engaged in negotiations with Bilateral to have the majority of the over $22,000 debt at issue forgiven. Surprisingly, however, once agreement on how much to reduce the debt was reached, Plaintiff suddenly alleged the debt is the result of identity theft and commenced this action a few weeks later.[1]

In light of the vagueness of Plaintiff's initial claim against Bilateral, in the weeks after the suit was commenced, we engaged in a conference with Plaintiff to obtain a better understanding of her allegations. Plaintiff advised that her only issue involving Bilateral was identifying the owner of the debt being collected.[2] She eventually indicated her willingness to settle so long as the identity of the debt owner was provided to her. Accordingly, through a series of telephone conferences over a period that spanned more than a month, the parties negotiated the settlement terms.

At the conclusion of the settlement negotiations, Defendant presented Plaintiff with a draft of the settlement documents that memorialized the settlement terms discussed. Notably, the undersigned also advised Plaintiff to consult with her own attorney regarding the terms. Plaintiff took ten (10) days to review the documents during which time she advised the undersigned that she also consulted with at least one other individual or entity regarding the terms.[3] Importantly, the following term was also included in the settlement agreement executed by Plaintiff:

> In entering into the Release, all Parties represent that they have or had the opportunity to obtain the advice of counsel of their choice, and/or such other persons as they may have deemed appropriate, and that the terms of the Release are fully understood and voluntarily accepted.

After Plaintiff's review, the parties each executed the settlement agreement and Plaintiff also executed the stipulation of discontinuance.

---

[1] Upon Plaintiff's contention that she was a victim of identity theft, Bilateral immediately ceased all collection actions and requested that Plaintiff provide proof of the identity theft through a police report or other means. Plaintiff has never provided any proof of identity theft.

[2] Prior to the commencement of this law suit, Plaintiff had already been provided with the name of the current owner of the debt, that of the original owner, and the related account number. However, she claims that she does not recall receiving the information.

[3] Plaintiff did not divulge whether the individual or entity with whom she consulted is an attorney or law firm.



**Attorneys At Law**

July 18, 2012
Page 3 of 5

### Execution of the Settlement Terms

Immediately after executing the settlement agreement, Bilateral commenced compliance with the mandates of the settlement agreement. The key term that Plaintiff demanded, and only term that calls on Bilateral to provide documents or information to Plaintiff, reads as follows:

> Defendant will forward to Plaintiff all documents in its possession containing information that identifies the owner(s) of the debt that is the subject of the Action ("Creditor Documents")

The aforementioned Creditor Documents were forwarded to Plaintiff on July 10, 2012, via electronic mail and a hard copy was placed in the mail on July 12th, along with any other consideration that was called for in the settlement agreement. In addition, in an abundance of caution, we included the contact number to the debt owner in a cover letter that accompanied the electronic mail and hard copy.[4]

### Plaintiff's Post-Settlement Demands

Plaintiff contacted this office on July 16th and advised that the phone number she had been given for the debt owner was incorrect. Though not required to do so under the settlement agreement, within an hour or so, the undersigned obtained the correct number from Bilateral and advised Plaintiff accordingly.[5] In the telephone conference that followed, Plaintiff was also advised that the debt owner operates several businesses, that the only number that Bilateral has on record corresponds to the number for one of those other businesses (Liberty Tax), but that the number is an accurate one for the debt owner.[6] Nevertheless, Plaintiff has refused to accept that the phone number is accurate, and, moreover, also now insists that Bilateral provide her with the name of managers at the debt owner that she can contact. As can been seen from the above-cited term, there are no such requirements in the settlement agreement. Nevertheless, Plaintiff has already been provided with the very phone number that she claims is being withheld from her.

### Plaintiff's New Accusations

Rather than respond to each of Plaintiff's latest round of unfounded allegations of wrongdoing by Bilateral, we note that her accusations simply serve as proof of her willingness to attempt to use the judicial system as a tool to intimidate and harass when she does not get her

---

[4] Ironically, the debt owner's phone number and address were included in the cover letter only because we wanted to ensure that Plaintiff would not have any reason call the undersigned or Bilateral for any additional information.

[5] Plaintiff had been initially provided with the debt owner's facsimile rather than contact phone.

[6] That the debt owner chooses to be contacted at its Liberty Tax phone number is beyond Bilateral's control.

0000083963M038



**MARIN/GOODMAN, LLP**

*Attorneys At Law*

July 18, 2012
Page 4 of 5

way.[7] As Plaintiff advised the undersigned in reference to her above-mentioned post-settlement demands, either Bilateral provides the newly requested information or she will attempt to invalidate the agreement. She is now following through on her threat. Notwithstanding the fact that Plaintiff's attempts to make new claims have no merit, all such new claims were dismissed via the settlement agreement:

> Plaintiff, for herself and her past, present and future agents, representatives, administrators, executors, trusts, trustees, heirs, family members, devisees, predecessors, successors, and assigns (collectively, the "Releasors"), expressly releases and forever discharges any and all past, present, and future actions, causes of action, claims, demands, damages, costs, expenses, compensation, third party actions, attorney's fees, suits at law or in equity, including claims or suits for contribution and/or indemnity of whatever nature and all consequential damages against BCC, its past, present, and future owners, employees, stockholders, shareholders, members, officers, directors, partners, agents, debt collectors, attorneys, brokers, contractors, servants, subsidiaries, parents, departments, divisions, predecessors, successors and/or assigns (collectively, the "Releasees"), arising out of or in any way relating to the subject debt, facts, or claims in the Action

**Conclusion**

Bilateral has followed through on all its obligations to Plaintiff. Not only has Plaintiff been provided with all documents and other consideration called for in the settlement agreement, she has been given additional information that goes above and beyond the requirements of the agreement. Accordingly, we respectfully ask the Court to not disturb the settlement agreement. However, should the Court be inclined to rule substantively on Plaintiff's demand, we respectfully request an opportunity to fully brief the issue.

---

[7] In making her new accusations, Plaintiff is also attempting to engender the Court's sympathy given that she is acting pro se. However, she is very experience and well aware of what she is doing. See Keisha Jones v. Commerce Bank, 2007 WL 672091 (S.D.N.Y. 2007)(dismissal of claim by plaintiff acting as pro se where she alleged negligence, breach of fiduciary duty, intentional and negligent infliction of emotional distress, commercial bad faith, consumer fraud, and breach of contract, and also sought to add claims for deceptive trade practices and fraud, invasion of privacy, and defamation because she contended that Commerce Bank was at fault for alleged fraudulent activity committed on her account by an unknown third-party); see also Keisha Jones v. Commerce Bank, N.A., 2006 WL 2642153 (S.D.N.Y. 2006); Keisha Jones v. Commerce Bancorp, Inc., 2006 WL 1409492 (S.D.N.Y. 2006).

0000083963M038

MARIN/GOODMAN, LLP

*Attorneys At Law*

July 18, 2012
Page 5 of 5

Respectfully,

*/s/ Rodrigo Armand, Jr.*

Rodrigo Armand, Jr., Esq.

Cc: Keisha Jones　　　　　　　　　　*[via email at prosenewyorkcityteacher@live.com]*
　　Plaintiff
　　Pro Se

　　Christina M. Conroy, Esq.　　　　*[via email at cconroy@kslaw.com]*
　　King & Spalding LLP
　　Attorneys for Equifax, Inc.

　　Mark A. DiAntonio　　　　　　　*[via email at diantonio@doclawyers.com]*
　　McCann & Geschke, P.C.
　　Attorneys for Central Financial Control and
　　Hahnemann University Hospital

　　Briana R. Hulet, Esq.　　　　　　*[via email at brhulet@JonesDay.com]*
　　Jones Day
　　Attorneys for Experian Information Solutions, Inc.

　　Andrew P. Karamouzis, Esq.　　　*[via email at akaramouzis@mka-law.com]*
　　Moran & Karamouzis, L.L.P.
　　Attorneys for Comcast Cable

　　Sandy Davis, Esq.　　　　　　　*[via email at sdavis@schuckitlaw.com]*
　　Schuckit & Associates, P.C.
　　Attorneys for Trans Union, LLC

0000083963M038