UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEISHA JONES,<br><br>    Plaintiff,<br><br>  -against-<br><br>EQUIFAX, INC., et al.<br><br>    Defendant. | Civil Action No.  11-9136<br>(CM) (KNF) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Joseph A. Strazzeri
JONES DAY
222 East 41st Street
New York, New York 10017
Telephone:  (212) 326-7894
jastrazzeri@jonesday.com

*Attorneys for Defendant
Experian Information Solutions, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

STANDARD FOR SUMMARY JUDGMENT ................................................................. 11

ARGUMENT ...................................................................................................................... 12

I.     Experian's Reinvestigation Complied with Section 1681i of the Fair Credit
Reporting Act as a Matter of Law ................................................................ 12

II.    Plaintiff Cannot Make the Required Showing that Experian Furnished an
Inaccurate Credit Report to Any Third Party .............................................. 17

III.   Plaintiff Alleges No Actual Damages, Which Are Required to Confer Standing
and to State a Claim Under Section 1681i .................................................... 19

     A.    Plaintiff Lacks Article III Standing ................................................ 19

     B.    Without Actual Damages, Plaintiff's Claim Under FCRA Section 1681i
Fails ...................................................................................................... 21

IV.   Plaintiff's Claims for Statutory and Punitive Damages Fail as a Matter of Law ........... 22

CONCLUSION .................................................................................................................... 24

## TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986).........................................................................................11

*Anderson v. Trans Union,*
405 F. Supp. 2d 977 (W.D. Wis. 2005) .........................................................16

*Bagby v. Experian Information Solutions, Inc.,*
162 Fed. Appx. 600 (7th Cir. 2006)..........................................................16, 17

*Bermudez v. Equifax Information Services, LLC,*
No. 07-CV-1492, 2008 WL 5235161 (M.D.Fla. Dec. 15, 2008).......................21

*Burns v. Bank of America,*
655 F. Supp. 2d 240 (S.D.N.Y. 2008) .............................................................21

*Caltabiano v. BSB Bank & Trust Co.,*
387 F. Supp. 2d 135 (E.D.N.Y. 2005) .............................................................21

*Casella v. Equifax Credit Information Services,*
56 F.3d 469 (2d Cir. 1995)..................................................................18, 20, 21

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)....................................................................................11, 12

*Chiang v. Verizon New England Inc.,*
595 F.3d 26 (1st Cir. 2010).............................................................................13

*Evans v. Credit Bureau,*
904 F.Supp. 123 (W.D.N.Y. 1995)..................................................................22

*Fashakin v. Nextel Communications,*
No. 05-CV-3080, 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009)................17, 21, 22

*Garrett v. Trans Union, LLC,*
No. 04-CV-00582, 2006 WL 2850499 (S.D. Ohio Sept. 29, 2006) .........18, 19, 24

*Gorman v. Wolpoff & Abramson, LLP,*
584 F.3d 1147 (9th Cir. 2009) ....................................................................12, 13

*Jaramillo v. Weyerhauser Co.,*
536 F.3d 140 (2d Cir. 2008).............................................................................12

*Jones v. Commerce Bank, N.A.,*
No. 06-CV-835, 2006 WL 2642153 (S.D.N.Y. Sept. 15, 2006)....................6, 7, 22

*Kerzer v. Kingly Manufacturing*,
    156 F.3d 396 (2d Cir. 1998)................................................................................11

*Levine v. WFNNB*,
    554 F.3d 1314 (11th Cir. 2009) ........................................................................23

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).....................................................................................19, 20

*Morris v. Trans Union LLC*,
    420 F. Supp. 2d 733 (S.D. Tex. 2006) ..............................................................17

*Murray v. New Cingular Wireless Services, Inc.*,
    523 F.3d 719 (7th Cir. 2008) ............................................................................23

*Ogbon v. Beneficial Credit Services, Inc.*,
    No. 10-CV-3760, 2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013) ....................15, 24

*Okocha v. HSBC Bank USA*,
    No. 08-CV-8650, 2010 WL 5122614 (S.D.N.Y. Dec. 14, 2010) ........................13

*Okocha v. Trans Union LLC*,
    No. 08-CV-3107, 2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011).........14, 15, 16, 24

*Perry v. Experian Information Solutions, Inc.*,
    No. 05-CV-1578, 2005 WL 2861078 (N.D. Ill. Oct. 28, 2005) ..........................17

*Podell v. Citicorp Diners Club, Inc.*,
    112 F.3d 98 (2d Cir. 1997).....................................................................12, 14, 23

*Robins v. Spokeo, Inc.*,
    No. CV10–05306, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011)..........................21

*Ruffin-Thompkins v. Experian Information Solutions, Inc.*,
    422 F.3d 603 (7th Cir. 2005) ............................................................................16

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007).......................................................................................22, 23

*Sarver v. Experian Information Solutions*,
    390 F.3d 969 (7th Cir. 2004) ............................................................................17

*Shepherd v. Liberty Acquisitions, LLC*,
    No. 11-CV-718, 2012 WL 2673101 (D.Colo. July 5, 2012) ..............................21

*Simonoff v. Kaplan, Inc.*,
    No. 10-CV-2923, 2010 WL 4823597 (S.D.N.Y. Nov. 29, 2010)........................23

*Summers v. Earth Island Institute,*
   555 U.S. 488 (2009) ..................................................................................20

*Weitz v. Wagner,*
   No. 07-CV-1106, 2009 WL 4280284 (E.D.N.Y. 2009) ............................24

*Whelan v. Trans Union,*
   862 F. Supp. 824 (E.D.N.Y. 1994) ..........................................................21

STATUTES

15 U.S.C. § 1681a(q)(4) ....................................................................................16

15 U.S.C. § 1681c-2(a) .....................................................................................16

15 U.S.C. § 1681h(a)(1) ................................................................................15, 16

15 U.S.C. § 1681i .......................................................................................passim

15 U.S.C. § 1681j .............................................................................................19

15 U.S.C. § 1681n ....................................................................................2, 20, 22

15 U.S.C. § 1681s-2(b) ................................................................................12, 13

FED. R. CIV. P. 36 ..............................................................................................7

FED. R. CIV. P. 56 ............................................................................................11

N.Y. Gen Bus L. § 380-t(m)(1) .........................................................................18

## INTRODUCTION

Although the allegations in the Amended Complaint are vague and misguided (Ex. A,

Amend. Compl. ¶¶ 51-61), Plaintiff Keisha Jones purportedly claims that Experian Information

Solutions, Inc. ("Experian"), a credit reporting agency ("CRA"), violated Section 1681i of the

Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq*.) by failing to conduct a

reasonable reinvestigation in response to her disputes concerning credit accounts with Central

Financial Control ("CFC") and Comcast Cable Communications ("Comcast").  (Ex. B, Jones

Dep. 5:19-6:5; 227:11-241:7, 268:15-17; Ex. C, Pl's Suppl. Rogs 9-10.)[1]  Since retaining counsel,

Plaintiff has clarified that she is not alleging any other inaccuracies or FCRA violations against

Experian in this action.  (*Id*.)  She has not been denied credit and is not claiming any actual

damages.  (*Id*. at 5:5-15; Ex. C, Pl's Suppl. Rogs. 4-6, Pl's Suppl. RFP Resp. 46-52.)

Plaintiff's claims should be dismissed because Experian's reinvestigation complied with

Section 1681i of the FCRA as a matter of law.  When Plaintiff disputed the credit items in 2011,

Experian promptly conducted a reinvestigation by reviewing the information and sending the two

creditors requests to verify the accounts.  Both CFC and Comcast verified that the credit items

were accurate.  Experian properly informed Plaintiff of the outcome and added a consumer

statement to her credit file indicating that she disputes the credit items.  Experian also informed

Plaintiff that if the accounts were the result of identity theft, that she should send Experian a

copy of a police report concerning the crime as well as proof of her identity and actual address.

Plaintiff did not send these materials to Experian in response.  In fact, it took over a year after

filing this lawsuit for Plaintiff to produce a copy of her driver's license, which displays a defunct

---

[1] All exhibits referenced herein are annexed to the Declaration of Joseph A. Strazzeri in
Support of Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment,
dated May 9, 2013.

post office box number, and she has still not produced a copy of her passport, social security card, or any other government issued identification.  Plaintiff testified that she sent Experian a police report five years before her disputes concerning an incident in February 2005, but she has no evidence of ever sending it, Experian has no record of receiving it, and in any event, it did not address the disputed accounts, which were opened several years later.

Plaintiff's claims also fail because there is no evidence that Experian ever issued a consumer credit report containing the disputed items to a third party after Experian's reinvestigation, which is required for there to be any liability under the FCRA.  Additionally, Plaintiff's claims fail because she alleges no actual damages, which are required to state a claim under FCRA Section 1681i, and there is no evidence that Experian knowingly and intentionally violated the FCRA or acted with reckless disregard of its duties under the statute, which is required for an award of statutory or punitive damages under FCRA Section 1681n.  Indeed, without any alleged injury, Plaintiff is without Article III standing to bring this action.  For these reasons, Experian's motion for summary judgment should be granted.

## STATEMENT OF FACTS

Plaintiff claims that Experian violated FCRA Section 1681i by failing to conduct a reasonable reinvestigation in response to her disputes concerning two CFC accounts and one Comcast account.

### Central Financial Control (CFC)

CFC reported the first disputed item to Experian in March 2007 and the second item in May 2007.  (Ex. D, EXP1190.)  Both items were collection accounts from Hahnemann University Hospital for $425 and $195, respectively.  (*Id*.)  The entries appeared on credit file disclosures that Ms. Jones received from Experian for years before she disputed them.  (*See, e.g.*, Ex. E, EXP1057-58 (Oct. 2, 2007).)

2

Ms. Jones finally disputed the CFC credit items by telephone on January 20, 2011.  (Ex. F, EXP1172-74.)  Experian promptly initiated a reinvestigation by sending CFC, the creditor, electronic requests to verify the accounts.  (*Id.*; Ex. G, EXP18-19.)  CFC responded by verifying that the credit items were accurate and that the same amounts remained past due.  (Ex. G.)  The name and social security number on the accounts matched Ms. Jones' name and social security number.  (*Id.*)  One account listed a Philadelphia address that had been reported as Ms. Jones' address by CFC and at least one other creditor, and the second account listed the P.O. Office Box in Bronx, New York that Ms. Jones supplied, in addition to the Philadelphia address.  (*Id.*; Ex. D, EXP1178, 1186, 1190.)  Plaintiff testified that even the U.S. Internal Revenue Service and the Pennsylvania Department of Motor Vehicles listed a Philadelphia address as hers because her identity had been stolen and her name and social security number were used to file a fraudulent tax return and to obtain a Pennsylvania ID card.  (Ex. B, Jones Dep. 28:17-29:6, 160:22-163:25, 167:17-168:15, 180:16-182:11.)  In fact, creditors had been reporting a Philadelphia address for Ms. Jones since *before* she claims her identity was stolen in 2005.  (Ex. D, EXP1178-79; *see, e.g.*, Ex. H, EXP520 (June 18, 2004).)  Plaintiff also sent a letter stamped January 27, 2011.  (Ex. I, EXP5-6; Ex. E, EXP1170.)  Her letter addressed the personal statement that appeared in her credit file, but it did not reference the disputed accounts or provide any details regarding the alleged identity theft.  (*Id.*)  Experian agents reviewed the information from Plaintiff and CFC then processed her dispute in compliance with the FCRA.  (Declaration of Jason Scott, dated May 8, 2013 ("Scott Decl.") ¶ 19.)

Experian informed Ms. Jones regarding the outcome of its reinvestigation on March 3, 2011.  (Ex. J, EXP98-119.)  The notice stated that CFC had verified the credit items as accurate.  (*Id.* at EXP105-06.)  Experian also added a consumer statement in her file reflecting that Ms.

Jones disputed the accounts.  (*Id.*)  In addition, Experian's notice stated that if the accounts were opened as a result of identity theft, that Ms. Jones should send Experian a copy of a police report filed when reporting the crime and a copy of a government identification card and proof of her valid address.  (*Id.* at EXP98.)  Ms. Jones was also asked for these materials on February 20, 2011, and she was told that the "consumer reporting agency can refuse or cancel your request for a block if, for example, you don't provide the necessary documentation."  (Ex. X, EXP274 ¶ 5.) Ms. Jones did not send Experian any of these materials in response.  (Ex. B, Jones Dep. 264:19-265:17, 287:24-288:16, 219:18-220:6; Scott Decl. ¶ 19.)  She never filed a police report with respect to the CFC accounts or Hahnemann University Hospital.  (*Id.* at 179:8-11.)  Experian's notice also informed Ms. Jones that CFC requested that she contact them directly.  (Ex. J, EXP98.)  Ms. Jones never contacted CFC, nor did she dispute the accounts with CFC.  (Ex. B, Jones Dep. 247:5-24.)

After Plaintiff filed this lawsuit, Experian again sent CFC a request to verify the same two credit items.  (Ex. K, EXP23-24.)  On March 9, 2012, CFC responded by verifying that the accounts were accurate.  (*Id.*)  The credit items were later purged due to applicable retention policies and no longer appear in Plaintiff's credit file.  (Ex. L, Jones Dep. Ex. 13.)

### Comcast Cable

Comcast first reported its disputed credit item to Experian in April 2011.  (Ex. D, EXP1184.)  It was an account that was $2,956 past due and had been written off.  (*Id.*)  The account was opened in January 2009.  (*Id.*)  Ms. Jones had received credit disclosures from Experian displaying this Comcast account, yet she did not dispute it when she called Experian stating that a Lexington Avenue address was not hers (despite testifying that she used the address for her business, ILV Enterprise).  (Ex. F, EXP1169; Ex. B, Jones Dep. 108:22-24.)

Ms. Jones finally disputed the Comcast credit item by telephone on November 18, 2011. (*Id*. at EXP1168-69.)  Ms. Jones testified that the Experian agent insisted during the call that she file and send a police report concerning the incident.  (Ex. B, Jones Dep. 272:23-273:25.) Experian also sent Plaintiff a notice advising her to contact local law enforcement for an identity theft report and to send Experian a copy of a government identification card and a utility bill or similar proof of her address.  (Ex. M, EXP140-41.)  Ms. Jones never filed a police report concerning the Comcast account and did not send Experian any materials in response.  (Ex. B, Jones Dep. 179:12-14, 264:19-265:17, 288:12-16; Scott Decl. ¶ 22.)  Experian reinvestigated the disputed item by sending Comcast a request to verify the account.  (Ex. N, EXP22; Ex. F, EXP1168-69.)  Comcast responded by verifying that the credit item was accurate.  (*Id*.)  Ms. Jones' name (slightly misspelled Keshia Jones), social security number, and year of birth were identified on the account, and it also listed a Philadelphia address.  (*Id*.)  An Experian agent reviewed the information from Plaintiff and Comcast, then processed the dispute in compliance with the FCRA.  (Scott Decl. ¶ 22.)  Experian informed Ms. Jones about the outcome of its reinvestigation on December 9, 2011.  (Ex. O, EXP162-81.)  Experian updated the credit item as verified and added a consumer statement reflecting that Ms. Jones disputed the account.  (*Id*. at EXP169.)  The notice also stated that if the account was opened as a result of identity theft, that Ms. Jones should contact Comcast directly.  (*Id*. at EXP162.)  Ms. Jones filed this lawsuit on the same day that Experian sent the notice to her, December 9, 2011.

**<u>Alleged Identity Theft</u>**

Ms. Jones claims to be the victim of extensive and repeated identity theft beginning in 2005.  (Ex. A, Amd Compl. at 1, 3; Ex. Q, Jones Bankr. Motion at 2-3; Ex. R, Jones Bankr.

Repayment Plan at 2; Ex. S, Complaint, *Jones v. Commerce Bankcorp, Inc.*, No. 24149-05 (Sup.

Ct. Bronx Cnty.); Ex. T, Order & Opinion, *Jones v. Commerce Bank*, 06-CV-835, 2006 WL

2642153 (S.D.N.Y. Sept. 15, 2006); Ex. B, Jones Dep. 110:3-20, 151:20-168:24, 179:19-184:20,

358:11-359:12.)  She claims that thieves used her identity to file a fraudulent tax return through

H&R Block to collect over $5,000; to withdraw $1,860 from her business' checking account at

Commerce Bank; to open a fraudulent account there using her personal information; to attempt

cashing a fake check in the amount of $3,764; to deposit a fraudulent State Farm insurance check

for $2,428; to report fraudulent wages to the Internal Revenue Service and Social Security

Administration; to obtain a fraudulent identification card from the State of Pennsylvania; and to

pay for medical bills, utilities, telephone, cable, and other services, including a $1,639 cell phone

bill.  (*Id*.)  As a result of the alleged fraud, Ms. Jones testified that even the Internal Revenue

Service and Pennsylvania Department of Motor Vehicles had her name and social security

number associated with a Philadelphia address – like CFC and Comcast.  (Ex. B, Jones Dep.

28:17-29:6, 160:22-163:25, 167:17-168:15, 180:16-182:11.)  Plaintiff does not contend that

Experian or the other defendants in this action are responsible for the theft of her identity.  (*Id*. at

255:19-256:12, 258:2-18, 356:14-18, Ex. S, Complaint, *Jones v. Commerce*, No. 24149-05 (Sup.

Ct. Bronx Cnty.))  The fraud, she alleges, was perpetrated by identity thieves.  (*Id*.)  She did,

however, sue Commerce Bank for $100 million in 2006 for allowing the identity thieves to

defraud her (Ex. S), but this Court (Baer, *J*.) dismissed the action because it found that there was

no connection between Commerce Bank and the actual theft of Plaintiff's identity and no

evidence of actual damages.  (Ex. T, Order, *Jones v. Commerce Bank*, No. 06-CV-835, 2006 WL

2642153 (S.D.N.Y. Sept. 15, 2006).[2])

Plaintiff purportedly filed a single police report on February 17, 2005 after she learned of the fraudulent tax filing, which supposedly occurred in late January or early February 2005.  (Ex. B, Jones Dep. 162:11-21, 168:25-179:24; Ex. U, Police Report.)  She did not file a police report concerning the fraudulent withdrawals at Commerce Bank that purportedly occurred in May 2005 or any of the subsequent instances of identity theft, including any fraud with respect to Hahnemann University Hospital/CFC or Comcast.  (*Id.* at 174:15-179:14; Ex. S, Complaint, *Jones v. Commerce Bankcorp*, No. 24149-05 ¶¶ 21-23.)  Plaintiff stated during her deposition that she sent the February 17, 2005 police report to Experian in November 2006, but she has no proof of it and there is no record of it in Experian's file.  (*Id.* at 186:10-214:11, 288:12-16, 317:14-22; Scott Decl. ¶¶ 19, 22.)  Plaintiff admitted in response to Experian's Requests for Admissions that she did *not* provide Experian with a copy (which response she has not amended pursuant to Federal Rule 36) (Ex. V, Pl's RFA Supp. Resp. No. 6), and she declined to supply a copy in this litigation until six months after Experian's Request for Production, doing so only "to satisfy what she understands to be a request to confirm her identity."  (Ex. W, Experian's RFP No. 17, Pl's RFP Response No. 17.)  Nonetheless, the report states only that her name and social security number were used without her permission in 2005.  (Ex. U.)  It states nothing about Philadelphia or any fraudulent accounts, including the Comcast account that was not opened until *four* years later.  (*Id.*)  Experian continually told Plaintiff to report these incidents of fraud

---

[2] Ms. Jones had also sought leave to bring FCRA claims against Experian, Trans Union, and Equifax in that action.  The court granted leave but cautioned her that she will face the same hurdles that proved fatal to her claims against Commerce, including lack of any compensable injury.  *Jones*, 2006 WL 2642153, at *7 (Ex. T).  Her allegations in that action appear very similar to those asserted in her Amended Complaint in this action, which should be dismissed on summary judgment in a similar manner.  (Ex. S.)

to the police and supply a police report, but she filed no other police reports after the single

report dated February 17, 2005, and she never sent one in response to Experian's repeated

requests (at least, she testified, since 2006).  (Ex. B, Jones Dep. 178:23-179:14, 186:10-214:11,

273:11-25, 287:10-288:16, 317:14-22; *see e.g.*, Ex. E, EXP1074 ¶ 5; Ex. J, EXP98-99; Ex. X,

EXP274 ¶ 5; Ex. M, EXP140-41.)

### Plaintiff's Anonymity

Experian's reinvestigation was particularly reasonable in light of Plaintiff's concealed

identity and transience.  Plaintiff has not had a permanent address since 2007.  (Ex. B, Jones Dep.

6:7-7:19, 44:21-47:23, 51:22-59:10.)  She has stayed with her mother and friends in Queens,

Bronx, and Yonkers since being evicted from her apartment at 1020 Grand Concourse in Bronx,

New York in 2007.  (*Id.*)  In the mid-2000s, she was splitting her time between New York and

North Carolina, where she allegedly purchased a second home on which she soon defaulted.  (*Id.*

at 72:10-82:24.)  She refuses to give out her physical address, which she considers "confidential,"

even on job applications and in the context of this lawsuit.  (*Id.* at 67:3-7, 114:16-115:3, 118:5-

10; Ex. W, Pl's Rog Resp. No. 1.)  Rather, she has used multiple post office boxes over the past

ten years for different purposes, as well as an address at "Mailboxes Etc."  (*Id.* at 25:19-33:12,

108:22-111:19.)  Her driver's license currently displays a defunct post office box number as her

address:  "PO Box 524081."  (*Id.* at 25:6-24, 31:23-33:12; Ex. Y, Jones License.)  That P.O. Box

number is different than the number that she gave Experian.  (Ex. I.)  She obtained her license

with this post office box, which she opened in June 2010 and closed in 2012.  (Ex. B, Jones Dep.

25:6-18, 31:23-33:12.)  Before June 2010, Plaintiff's licenses displayed an address where she

had not lived since 1997.  (*Id.* at 33:12-34:16.)  Even though Plaintiff owned her own apartment

from 1997 to 2007, her driver's license displayed an old address, where the Department of Motor

Vehicle continued to direct her mail.  (*Id.* at 35:3-11, 56:13-20.)

Plaintiff has still produced no official proof of her address or social security number.  She

first objected to producing her birth certificate, social security card, or passport on the grounds of

relevance, but she later testified that she cannot locate these indentifying documents.  (Ex. W,

Pl's RFP Resp. Nos. 19, 22, 23; Ex. B, Jones Dep. at 35:17-43:17.)  To date, she has not

produced copies in response to Experian's discovery requests.  (*Id.*)  Ms. Jones testified that she

is not concerned that these vital documents have been missing for years, even though she claims

to be the victim of extensive identity theft, and she has not reported them as missing.  (Ex. B,

Jones Dep. at 35:17-43:17.)

### No Credit Reports

There is no evidence that Experian ever reported the disputed credit items to any third

parties after Experian's reinvestigation.  There were no requests for Plaintiff's credit history, and

no credit reports were generated within two years of her filing this action.  (Ex. D, EXP1191-96.)

In fact, Plaintiff placed a security freeze on her file in 2006 to preclude any such inquiries by

prospective creditors, insurers, or employers.  (Scott Decl. ¶ 23; Ex. F, EXP1150; Ex. D,

EXP1196.)  Ms. Jones testified that she has not applied for credit while the security freeze has

been in place since 2006, and she did not authorize access to her credit file at any point before

the disputed items were removed.  (Ex. B, Jones Dep. 281:7-282:20.)  It appears that a collection

agency, Enhanced Recovery Company, and AMEX performed "account reviews" in February

2011, which are permitted under the law notwithstanding a security freeze, but there is no

evidence or reason to assume that either entity accessed information concerning the CFC or

Comcast accounts, and these "soft inquiries" occurred before Experian completed its

reinvestigation of the CFC accounts and before Plaintiff disputed the Comcast account.  Without

any evidence that Experian ever issued a consumer credit report containing the disputed items to

a third party after its reinvestigation, there is no liability under the FCRA.

### No Actual Damages

Plaintiff is not claiming any actual damages in this action – no economic loss, emotional

distress, injury to reputation, or any other form of actual damages.  (Ex. C, Pl's Suppl. Rogs. 4-6,

22-24, Pl's Suppl. RFP Resp. 46-52; Ex. B, Jones Dep. 5:5-15.)  She has not applied for credit or

been denied any credit.  (*Id.*; Ex. B, Jones Dep. 281:7-10.)  Nevertheless, the disputed items were

unlikely to have affected her overall creditworthiness had she applied for credit, because there

are significant negative items in her credit file that she does not dispute.  Ms. Jones filed for

Chapter 13 bankruptcy in 2006, which was dismissed, she has been in default on several student

loans, and there is an undisputed collection account from a medical group in Manhattan.  (Ex. B,

Jones Dep. 86:11-25, 131:25-132:7; 240:17-22; Ex. P, Jones Bankr. Petition; Ex. L, Jones Dep.

Ex. 13 at 4.)  Plaintiff also defaulted and foreclosed on two homes and a vacation timeshare,

owes years of back taxes, and defaulted on tens of thousands of dollars in credit card debt.  (*Id.* at

57:23-60:8, 69:18-70:22, 79:4-81:21, 129:21-130:21, 135:24-137:4; Ex. P, Jones Bankr. Petition

at 6, 9-10.)  She has been unemployed for years, and she has no assets or income.  (*Id.* at 92:7-

95:16, 123:16-20; Ex. C, Pl's Suppl. Rog 1.)  The disputed credit items were not unique or

inconsistent in her credit file, and she does not allege that they caused her any injury.

### Plaintiff's Willfulness Claim

Plaintiff commenced this action on December 9, 2011 against Central Financial Control,

Hahnemann University Hospital, Comcast Cable, Bilateral Credit, Trans Union, Equifax, and

Experian.  Her allegations against Equifax and Trans Union were similar to those against

Experian.  (Ex. A, Amd. Compl. ¶¶ 19-50.)  She does not appear to claim that Experian

reinvestigated her disputes any differently than Equifax and Trans Union.  (*Id.*; Ex. B, Jones Dep.

270:5-271:16.)  When asked why she brought the action against CFC and Hahnemann University

Hospital, Ms. Jones explained that she figured she would "cast [her] net wide and see what

happens."  (Ex. B, Jones Dep. 254:18-22.)  Ms. Jones admitted that she has no reason to believe

that anyone at Experian intentionally put information in her credit file that was inaccurate, that

anyone at Experian intentionally wanted to keep inaccurate information in her file, or that she

was singled out in any way or intentionally harmed by Experian.  (*Id.* at 290:5-291:18.)  There is

no evidence of any willful misconduct.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "against a party who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The

court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a).  "Only disputes over facts that might affect the outcome of the suit" will preclude a grant

of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The

existence of a scintilla of evidence in support of the non-moving party is not enough to show a

genuine issue of material fact, "there must be evidence on which the jury could reasonably find

for the plaintiff." *Id*. at 252.  The court must ask "whether reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict."  *Id*.  Conclusory

allegations, conjecture, and speculation are insufficient.  *Kerzer v. Kingly Mfg.*, 156 F.3d 396,

400 (2d Cir. 1998).  "When the burden of proof at trial would fall on the nonmoving party, it is

ordinarily sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim."  *Jaramillo v. Weyerhauser Co.*, 536 F.3d 140, 145

(2d Cir. 2008).  "[A] complete failure of proof concerning an essential element of the non

moving party's case necessarily renders all other facts immaterial" and warrants summary

judgment.  *Celotex*, 477 U.S. at 323.

## ARGUMENT

**I.    EXPERIAN'S REINVESTIGATION COMPLIED WITH SECTION 1681i OF THE FAIR CREDIT REPORTING ACT AS A MATTER OF LAW**

FCRA Section 1681i provides that "if the completeness or accuracy of any item of

information contained in a consumer's file at a consumer reporting agency is disputed by the

consumer . . . the agency shall, free of charge, conduct a reasonable reinvestigation to determine

whether the disputed information is inaccurate and record the current status of the disputed

information, or delete the item from the file."  15 U.S.C. 1681i(a)(1)(A).  The Second Circuit has

observed that the "credit reporting agency's 'reinvestigation' typically entails sending a

Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have

reported a disputed account."  *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir.

1997); *see also Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) ("the

CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the

furnisher.")  Once the  furnisher of the disputed information receives notice of the dispute from

the CRA, subsection 1681s-2(b) provides that the furnisher shall "(A) conduct an investigation

with respect to the disputed information;  (B) review all relevant information provided by the

[CRA] pursuant to section 1681i(a)(2) . . .; and (C) report the results of the investigation to the

[CRA]."  § 1681s-2(b)(A)-(C).  The Ninth Circuit has explained that the furnisher's obligation to

"investigate" under § 1681s-2 is far more vigorous than the CRA's obligation to "reinvestigate"

under § 1681i:

> Indeed, as the statute recognizes, the furnisher of credit information stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation. With respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to "re investigate" a matter once already investigated in the first place. § 1681i(a)(1) (emphasis added). It would therefore make little sense to impose a more rigorous requirement on the CRAs than the furnishers. Instead, the more sensible conclusion is that, if anything, the "reasonable" qualifier attached to a CRA's duty to reinvestigate limits its obligations on account of its third-party status and the fact that it is repeating a task already completed once.

*Gorman*, 584 F.3d at 1156-57; *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st

Cir. 2010) ("First, a primary component of CRAs' reinvestigation requirement . . . is CRAs'

obligation to promptly notify a furnisher of challenged information of the consumer's dispute so

that the furnisher can conduct an investigation pursuant to § 1681s-2(b)."); *Okocha v. HSBC*

*Bank USA,* No. 08-CV-8650, 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010). Thus, "the

'reasonable' qualifier with regard to *re* investigations by CRAs signals a limitation on the CRAs

duty, not an expansion." *Id.* at 1156 (emphasis in original).

Here, Experian promptly initiated a reinvestigation by contacting the sources of the

disputed information – CFC and Comcast. Experian sent Automated Consumer Dispute

Verifications ("ACDVs") to CFC and a Consumer Dispute Verification ("CDV") form to

Comcast. (Ex. G & N.) ACDVs and CDVs identify the consumer, indicate the basis for the

consumer's dispute, and ask the creditor to verify or amend the reported information. (Scott

Decl. ¶ 15.) CFC and Comcast both responded by verifying the disputed items and updating

certain details regarding the accounts. (Ex. G & N.) Experian agents reviewed and processed

these responses in compliance with the FCRA, then sent Ms. Jones a summary reflecting the

results of each reinvestigation.  (Exs. J & O; Scott Decl. ¶¶ 19, 22.)  The summary also contained

a statement regarding the options that Plaintiff could pursue if she disagrees with the results,

including contacting the sources of the disputed information.  (*Id*. at EXP100, 163.)  Experian

updated Plaintiff's credit file to reflect that she disputed the CFC and Comcast items.  (*Id*. at

EXP105-06, 169.)  The summary also contained a notice for each disputed item stating: "If the

account was opened as a result of identity theft, the credit grantor may not know how to contact

you to discuss this matter.  The credit grantor requests that you contact them directly."  (*Id*. at

EXP98, 162.)  In addition, Experian repeatedly asked Ms. Jones for a copy of a valid identity

theft report filed with a government enforcement agency, as well as a copy of a government

issued identification card and proof of her address, such as a utility bill.  (Ex. B, Jones Dep.

273:11-25; *see e.g.*, Ex. E, EXP1074 ¶ 5; Ex. J, EXP98-99; Ex. X, EXP274 ¶ 5; Ex. M, EXP140-

41.)  However, Plaintiff never sent Experian these materials in response.  (*Id*. at 287:10-288:16;

Scott Decl. ¶¶ 19, 22.)

The Second Circuit has described this reinvestigation procedure as compliant with the

FCRA.  *See Podell*, 112 F.3d 98.  In *Podell*, the CRA received the plaintiff's dispute letter and

reinvestigated the account by sending a CDV to the creditor indicating that the plaintiff had

disclaimed responsibility for the debt.  *Id*. at 102.  The creditor responded that the account was

accurately reported.  *Id*.  The CRA then placed a note in the plaintiff's file reflecting the results

of the reinvestigation and sent confirmation to the plaintiff, along with a notice alerting plaintiff

of his right to file a brief statement explaining his dispute.  *Id*.  The Second Circuit affirmed

summary judgment dismissing the action because the plaintiff "failed to demonstrate a genuine

material question regarding [the CRA's] compliance with the reinvestigation procedures of

FCRA."  *Id*. at 104; *Okocha v. Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594, at *6

(E.D.N.Y. Mar. 31, 2011) (holding that Experian's reinvestigation procedures satisfied its duty to reinvestigate disputes in a reasonable manner).

Experian's reinvestigation here was particularly reasonable in light of Plaintiff's failure to supply the materials that Experian repeatedly requested, including a copy of a government issued identification card and proof of her address.  In fact, none of Plaintiff's correspondence to Experian ever revealed her actual street address; they list only a P.O. Box (Ex. I, EXP1, 8, 11, 13) or no address at all (*Id.* at EXP5).  Plaintiff even refused to disclose her address in response to Experian's Interrogatories in this action, and she delayed producing a copy of her driver's license until the eve of her deposition.  (Ex. W, Rog 1, RFP 20.)  The license displays only a P.O. Box number, and it is different than the number that she gave Experian.  (Exs. I & Y.)  She still has not produced copies of her passport, social security card, or birth certificate to confirm her identity.  The FCRA provides that a CRA may terminate a reinvestigation of information disputed by a consumer under Section 1681i for "failure by a consumer to provide sufficient information to investigate the disputed information."  § 1681i(a)(3)(A); *see also* § 1681h(a)(1) (requiring " that the consumer furnish proper identification").  In *Ogbon v. Beneficial Credit Services, Inc.*, this Court recently dismissed a plaintiff's § 1681i claim against Experian because the only identifying information that she ever sent to Experian (which included her New York learner's permit and a ConEdison bill) lacked proof of her Social Security number.  *Ogbon,* No. 10-CV-3760, 2013 WL 1430467, *4, 8 (S.D.N.Y. Apr. 8, 2013) (Engelmayer, *J.*).  The Court also dismissed the plaintiff's claim against Trans Union, even though she had additionally sent them a copy of her Social Security Card, because one of the documents displayed an apartment number in her address and another did not, thus it held that Trans Union was justified in finding the proof insufficient for a reinvestigation.  *Id.* at *9.  Similarly, in *Okocha v. Trans Union LLC*,

the court dismissed the plaintiff's claim under Section 1681i because "[a]lthough Equifax failed

to send Plaintiff notification of its reinvestigation, it was entitled to require proof of proper

identification under § 1681h(a)(1) before doing so, and Plaintiff failed to comply with repeated

requests for such information."  *Okocha*, 2011 WL 2837594, at *8; *see also Ruffin-Thompkins v.

Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) (incomplete letter sent by

plaintiff "did not prompt a full reinvestigation"); *Anderson v. Trans Union*, 405 F. Supp. 2d 977

(W.D. Wis. 2005) (granting summary judgment where plaintiff failed to verify social security

number).  Additionally, Section 1681c-2 of the FCRA, which provides for the blocking of

information that a consumer claims resulted from identity theft, requires the consumer to provide

*each* of the following:

> (1)  appropriate proof of the identity of the consumer;
> (2)  a copy of an identity theft report;
> (3)  the identification of such information by the consumer; and
> (4)  a statement by the consumer that the information is not
> information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).  A "identity theft report" is defined as an official report filed with an

appropriate federal, state, or local law enforcement agency, which subjects the person who filed

the report to criminal penalties if the information is false.  § 1681a(q)(4).  Plaintiff did not

provide any of these critical materials in support of her dispute.

Some courts have held that in limited circumstances, a CRA may be required to go

beyond the original source if the consumer has alerted the reporting agency to the possibility that

the source may be unreliable or the reporting agency itself knows or should know that the source

is unreliable.  *See, e.g., Bagby v. Experian Info. Solutions, Inc.*, 162 Fed. Appx. 600, 606 (7th Cir.

2006).  Those courts have also held that the determination will depend on the cost of verifying

the accuracy of the source versus the possible harm inaccurately reported information may cause

the consumer.  *Id*.  Here, Plaintiff presented no evidence that CFC or Comcast were systemically unreliable sources, and there was *no* harm to Plaintiff to weigh against the high cost of verifying the accuracy of these sources.  *See Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004) (finding that lenders report millions of accounts to Experian daily and the "increased cost to Experian to examine each of these entries individually would be enormous").  Thus, even under the standard applied in those circuits, Experian had no duty to go beyond these creditors' responses.  *See, e.g., Bagby,* 162 Fed. Appx. at 606 (sending CDVs held sufficient given the plaintiff's failure to present evidence that Sears or Discover were unreliable sources); *Morris v. Trans Union LLC*, 420 F. Supp. 2d 733, 739 (S.D. Tex. 2006) (finding no duty to go beyond a creditor's response because it had provided consistently reliable information for many years and reaffirmed the accuracy of the account information); *Perry v. Experian Info. Solutions, Inc.*, No.: 05-CV-1578, 2005 WL 2861078, at *7-8 (N.D. Ill. Oct. 28, 2005) (finding that use of ACDVs satisfies Experian's duty to reinvestigate and holding that disputes letters do not put CRAs on notice that a creditor is unreliable).

Experian's reinvestigation met the requirements of Section 1681i as a matter of law. There is no evidence of willful noncompliance, required for statutory or punitive damages, which are the only type of damages sought here.  *See, supra*, at Point IV.  Accordingly, Plaintiff's claims should be dismissed.

## II.   PLAINTIFF CANNOT MAKE THE REQUIRED SHOWING THAT EXPERIAN FURNISHED AN INACCURATE CREDIT REPORT TO ANY THIRD PARTY

Plaintiff's claims also fail because there is no evidence that Experian reported the disputed credit items to any third party after its reinvestigation.  In order to recover under the FCRA, a "plaintiff must show that a potential creditor became aware of the derogatory credit report."  *Fashakin v. Nextel Comms.*, No. 05-CV-3080, 2009 WL 790350, at *12 (E.D.N.Y. Mar.

17

25, 2009) ("Plaintiff has not alleged any such post-dispute disclosure, and therefore has failed to

meet her burden under the FCRA."); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d

Cir. 1995) (dismissing claim because there was no evidence that CRAs provided a credit report

to any third party); *Garrett v. Trans Union, LLC*, No. 04-CV-00582, 2006 WL 2850499, at *14

(S.D. Ohio Sept. 29, 2006) ("A showing of inaccuracy in a credit report provided to third-parties

is an essential element of a claim under the Fair Credit Reporting Act."), *quoting Spence v. TRW,*

*Inc.*, 92 F.3d 380, 382 (6th Cir. 1996).

      Here, there is no evidence that Experian ever furnished a credit report, much less an

inaccurate one, to any third party.  Plaintiff has had a security freeze on her credit file since

2006, and she testified that she has not applied for credit or authorized access to her credit file at

any time before the disputed items were removed.  (Ex. B, Jones Dep. 281:7-282:20; Scott Decl.

¶ 23.)  Experian did not generate any credit reports concerning Ms. Jones in the two-year

limitation period preceding her lawsuit.  (Ex. D, EXP1191-96; Ex. O, EXP180.)  It appears that a

collection agency, Enhanced Recovery Company, and AMEX performed "account reviews" in

February 2011, which are permitted notwithstanding a security freeze (*see* N.Y. Gen Bus L. §

380-t(m)(1)), but these "soft inquiries" involve access to only partial information for the limited

purpose of reviewing the creditor's own account or other business with the consumer.  (*Id.*; Scott

Decl. ¶ 23.)  Thus, there is no evidence or reason to assume that either entity accessed

information concerning CFC or Comcast, which are unrelated to Enhanced Recovery Company

or AMEX.  And both soft inquires occurred before Experian completed its reinvestigation of the

CFC accounts and before Plaintiff disputed the Comcast account.  (Ex. D, EXP1191-96)  Even

had the account reviews been credit inquiries (which they were not), there is no liability until a

consumer disputes a credit item and the CRA is given the statutory time period to respond.  *See*

*Casella*, 56 F.3d 469 at 474; 15 U.S.C. §§ 1681i(a)(1), 1681j (CRA has 45 days to reinvestigate dispute from free annual disclosure).

Moreover, Plaintiff has not produced any credit reports furnished to third parties.  In *Garrett*, the court dismissed the plaintiff's claim because he did not produce credit reports sent to third parties.  *Garrett*, 2006 WL 2850499 at *14.  The court disregarded the plaintiff's argument that the CRA had furnished reports to creditors seeking to make promotional offers, to the plaintiff's existing insurance company, and to his creditors performing an "Account Review," noting that only limited information is provided for promotional inquiries and " in 'account review' inquiries, companies only receive partial information for the limited purpose of review of that creditor's own account or other business with Plaintiff."  *Id.*  Without any evidence that Experian ever issued a consumer credit report containing the disputed items to a third party after its reinvestigation, there is no liability under the FCRA.

### III.    PLAINTIFF ALLEGES NO ACTUAL DAMAGES, WHICH ARE REQUIRED TO CONFER STANDING AND TO STATE A CLAIM UNDER SECTION 1681i

Plaintiff is not claiming any actual damages in this action – no economic loss, emotional distress, injury to reputation, or any other form of actual damages.  (Ex. C, Pl's Suppl. Rogs. 4-6, Pl's Suppl. RFP Resp. 46-52; Ex. B, Jones Dep. 5:5-15.)  She has not applied for credit or been denied any credit.  (*Id.*; Ex. B, Jones Dep. 281:7-10.)  Without any injury in fact, Plaintiff lacks Article III standing to bring this action.  Even if she were to have standing, Plaintiff cannot state a claim under FCRA Section 1681i without any actual damages.

#### A.    Plaintiff Lacks Article III Standing

A plaintiff has standing where (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560-61 (1992).  Here, Plaintiff lacks standing because she has not alleged that she has, in fact, suffered any injury due to Experian's alleged conduct.

A number of courts have stated that the FCRA Section 1681n authorizes a cause of action for statutory damages without the need to show any actual damages.  *See Casella*, 56 F.3d at 476.  Section 1681n provides:

> Any person who willfully fails to comply with any requirement imposed under [the FCRA] **with respect to any consumer** is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure or **damages of not less than $100 and not more than $1,000**.

15 U.S.C. § 1681n (emphases added).  This provision, however, cannot properly be read to confer a cause of action to consumers who do not claim an injury from an alleged violation.  Nothing in the FCRA's text or statutory history supports such an illogical result.  Although the statute's text allows a plaintiff to recover without proof of the amount of his or her damages, it does not altogether eliminate the baseline requirement of actual injury.  Rather, a consumer alleging a willful violation of the FCRA is permitted to elect the measure of "damages" that he or she will recover for the injury—either "any actual damages" or statutory "damages of between $100 and $1,000."

If the FCRA *were* read to permit actions on behalf of consumers who have suffered no concrete injury, it would be unconstitutional.  Congress is without power to confer Article III standing on plaintiffs who have suffered no injury in fact, and doing so would violate the separation of powers doctrine.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is the hard floor of Article III jurisdiction that cannot be removed by statute.").  Rather, in order for Congress to authorize a private party's invocation of judicial power, there must be some "concrete, *de facto* injur[y]."  *Lujan*, 504 U.S. at 578.  A mere violation of the FCRA with respect to a particular individual—absent any adverse affect to that

individual—is not an "injury" sufficient to confer Article III standing.  *See Robins v. Spokeo, Inc.*, No. 10-CV-05306, 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011) (dismissing the plaintiff's claim for statutory damages under the FCRA because he failed to allege "the Article III minima of injury-in-fact.")  For a plaintiff—like Plaintiff here—who suffers no injury from the alleged FCRA violation, statutory damages amount to nothing more than a bounty that cannot create a "Case or Controversy" where one does not otherwise exist.

Because Plaintiff does not have standing to bring her claims before this Court, no subject matter jurisdiction exists and the case should be dismissed.

**B.**     **Without Actual Damages, Plaintiff's Claim Under FCRA Section 1681i Fails**

An essential element that a plaintiff must establish for a claim under the FCRA is evidence of an injury and that the injury was proximately caused by the consumer reporting agency.  *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995); *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008); *Bermudez v. Equifax Info. Servs., LLC*, No. 07-CV-1492, 2008 WL 5235161, at *4 (M.D.Fla. Dec. 15, 2008) (listing elements of § 1681i claim); *Shepherd v. Liberty Acquisitions, LLC*, No. 11-CV-718, 2012 WL 2673101, at *3 (D.Colo. July 5, 2012) (same).  Plaintiff bears the burden of demonstrating "actual damages sustained" as a result of the defendant's activities.  *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005); *Whelan v. Trans Union*, 862 F. Supp. 824, 832-33 (E.D.N.Y. 1994) ("Plaintiffs have an affirmative duty of coming forward with evidence in support of their claim that they were caused damage due to TRW's alleged inaccurate report.")  Here, Plaintiff is not claiming any actual damages.  (Ex. C, Pl's Suppl. Rogs. 4-6, Pl's Suppl. RFP Resp. 46-52; Ex. B, Jones Dep. 5:5-15.)  She has not been denied credit, and there is no evidence of any pecuniary loss.  (*Id.*; Ex. B, Jones Dep. 281:7-10.)  Therefore, her claims under Section 1681i fail as a matter of law.  *See Fashkin*, 2009 WL 790350, at *12 (granting summary

judgment because "even if Trans Union had failed to meet its reinvestigation obligations, plaintiff has not demonstrated that there is a disputed issue of fact as to whether she was harmed as a result of credit reports published by Trans Union"); *Evans v. Credit Bureau*, 904 F.Supp. 123, 126 (W.D.N.Y. 1995) (dismissing complaint because "[e]ven if plaintiff could demonstrate that defendant violated § 1681i by inaccurately reporting available information, he fails to present any evidence that he was damaged thereby.")

In fact, when Ms. Jones's case against Commerce Bank arising out of similar allegations of identity theft was dismissed in 2006, she was granted leave to bring claims against Experian, Trans Union, and Equifax under the FCRA, but this Court explained that she "will have to show that she actually suffered financial or economic injury as a foreseeable result of each defendant's actions." *Jones v. Commerce Bank*, No. 06-CV-835, 2006 WL 2642153, at *7 (S.D.N.Y. Sept. 15, 2006) (Baer, *J.*) (Ex. T).  The Court cautioned her that "in pursuing claims against these additional defendants, she will face many of the same hurdles that proved fatal to her claims against Commerce.  For example, plaintiff will have to show that each defendant proximately caused compensable injury to her."  *Id*.  Plaintiff has not overcome that hurdle.

## IV.   PLAINTIFF'S CLAIMS FOR STATUTORY AND PUNITIVE DAMAGES FAIL AS A MATTER OF LAW

Although she claims no actual damages, Plaintiff apparently still seeks statutory and punitive damages.  (Ex. C, Pl's Suppl. Rogs 11-12.)  FCRA Section 1681n provides that a person who *willfully* fails to comply with a requirement imposed under the FCRA is liable for "actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000" and punitive damages.  § 1681n(a).  Under this standard, an injured plaintiff can recover statutory and punitive damages only if he or she proves that the credit reporting agency knowingly and intentionally violated the FCRA or acted with "reckless

disregard of a requirement of FCRA." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).  In

*Safeco*, the Supreme Court held that a willful FCRA violation required a finding that the

defendant's challenged practice was based on an "objectively unreasonable" interpretation of the

FCRA.  *Id*. at 70.  "Where, as here, the statutory text and relevant court and agency guidance

allow for more than one reasonable interpretation, it would defy history and current thinking to

treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."

*Id.* at 71.  The Court explained that the threshold test is objective, and willfulness cannot be

found against "those who followed an interpretation that could reasonably have found support in

the courts, whatever their subjective intent may have been."  *Id.; s*e*e, e.g., Levine v. WFNNB*,

554 F.3d 1314 (11th Cir. 2009) ("A consumer reporting agency does not recklessly violate the

Act when it acts in accord with an objectively reasonable interpretation of the Act."); *Murray v.*

*New Cingular Wireless Servs., Inc.*, 523 F.3d 719 (7th Cir. 2008); *Simonoff v. Kaplan, Inc.*, No.

10-CV-2923, 2010 WL 4823597, at *9 (S.D.N.Y. Nov. 29, 2010).

 Here, Plaintiff cannot show that Experian's conduct was based on an objectively

unreasonable interpretation of the FCRA.  Experian's reinvestigation was consistent with

guidance from the U.S. Courts of Appeal, including the Second Circuit, which has held that

CRAs are entitled to report information verified by their furnishers.  *Podell*, 112 F.3d at 101-02.

Experian properly reinvestigated the two disputed accounts, which were verified by CFC and

Comcast with Plaintiff's name and social security number.  Plaintiff was asked for proof of her

identity and address, as well as a valid police report, which she did not send in response.

Experian communicated the results to Plaintiff and added a consumer statement to her file

reflecting that she disputed these items.  Numerous courts have held that the CDV/ACDV

reinvestigation procedure is reasonable as a matter of law under the lower standard applied for

allegations of *negligent* noncompliance.  *See Ogbon*, 2013 WL 1430467, at \*7; *Okocha*, 2011 WL 2837594, at \*8.  It cannot be considered *willful* noncompliance.  Because Experian's reinvestigation was not based on an objectively unreasonable interpretation of the FCRA, Plaintiff's willfulness claims should be dismissed.  *See, e.g., Weitz v. Wagner*, No. 07-CV-1106, 2009 WL 4280284, at \*5 (E.D.N.Y. 2009); *see also Garrett*, 2006 WL 2850499, at \*12 ("Failure to adequately re-investigate or promptly correct or delete information after notice does not constitute willfulness.")

## CONCLUSION

For all of the foregoing reasons, Experian respectfully requests that this Court grant summary judgment it its favor, dismiss Plaintiff's action in its entirety, and award Experian all other relief that the Court deems just and proper.

Dated:   New York, New York
          May 9, 2013

JONES DAY

By:    /s/  Joseph A. Strazzeri
          Joseph A. Strazzeri (JS8414)
222 East 41st Street
New York, New York 10017
(212) 326-3939

Attorneys for Defendant
Experian Information Solutions, Inc.