UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEISHA JONES,<br><br>      Plaintiff,<br><br>-against-<br><br>EQUIFAX, INC., et al.<br><br>      Defendant. | Civil Action No. 11-9136<br>(CM) (KNF) |

## DECLARATION OF JASON SCOTT IN SUPPORT OF DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S <u>MOTION FOR SUMMARY JUDGMENT</u>

JASON SCOTT declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Regulatory Affairs, Compliance Expert in the Consumer Affairs Special Services unit at Experian Information Solutions, Inc. ("Experian"). I have held this position since January 2011. I have been employed by Experian since January 2003. As a Regulatory Affairs, Compliance Expert, my general responsibilities include processing, responding, and examining consumer complaints; verifying and updating consumers' credit profile disputes; and researching records regarding Experian subscribers relating to consumer complaints.

2. Based upon my training and experience, I am very familiar with Experian's policies and procedures for the compilation, retention, reinvestigation, and disclosure of consumer credit information.

3. I also am familiar with the business records maintained by Experian's National Consumer Assistance Center and the manner and procedures by which the records are prepared and maintained. Those records are prepared by agents or employees of Experian in performance of their regular business duties. The records are made either by persons with knowledge of the

matters they record or from information supplied by persons with such knowledge. It is Experian's regular business practice to maintain such records in the course of its business.

4. The facts set forth herein are based upon my personal knowledge and information available to me in the above-referenced capacity. If I were called upon to testify to them, I could and would competently do so.

## About Experian Information Solutions, Inc.

5. Experian is a consumer credit reporting agency as defined by the Fair Credit Reporting Act ("FCRA"). As a consumer credit reporting agency, Experian generally gathers credit account and public-records information originated by others and makes that information available to parties engaged in credit granting and other transactions. Experian itself does not originate or create any credit account or public-records information. Nor does Experian make loans or decide who should receive credit. Both of those functions are handled entirely by the credit-granting industry, over which Experian has no control.

6. Experian essentially acts as a storehouse of credit account and public-records information by assembling, storing, and reporting data pursuant to the FCRA and similar state laws. Furnishers of credit account and public-records information report "trade lines" to Experian, such as account numbers, account status updates, payment history, and balance information. The furnishers also report consumer identifying information associated with the trade lines, such as the account holder's name, address, and Social Security number, which links the trade lines to the appropriate consumer(s).

7. There are over 2.6 billion trade lines reported by over 30,000 different sources in Experian's files belonging to over 200 million consumers. About 50 million of these trade lines are updated on a daily basis.

8. Experian works with creditors to ensure that they supply the most complete and accurate data possible. Experian only accepts consumer credit information from sources that it has reasonably deemed to be reliable reporters of such information. In order to report credit information to Experian, a creditor must pass through a membership due diligence process and execute appropriate contracts. In so doing, Experian conducts a site visit and thorough data audits. Additionally, Experian also has built into its computer system an extensive range of checks and balances that are designed to detect as many potential errors as possible.

9. Because credit information is constantly updating, Experian's computer system does not store completed credit reports. Instead, the system stores the trade lines, which are linked to identifying information. To determine which of the billions of trade lines in its files should be displayed on a particular credit report, Experian's computer system compares and "matches" the identifying information provided for an "inquiry" with the identifying information reported with the various trade lines. The identifying information supplied to Experian by creditors and consumers is not always complete, consistent, unique, and accurate. Consumers routinely use more than one address or different or incomplete forms of their name (for example, with their full middle name, a middle initial, or neither). Creditors and consumers sometimes provide incorrect identifying information to Experian, either because of a mistake (such as a misspelling or misreading transposed numbers) or for other reasons such as attempts by consumers to hide bad credit records from lenders. Creditors may also report credit information without certain identifying information, such as the consumer's Social Security number or full date of birth. Faced with this reality, Experian uses matching techniques and other procedures that accommodate the fact that Experian cannot control the identifying information provided by creditors.

10. Experian could not require an exact matching of all identifying information before it allows a credit item to be displayed on a consumer's credit report. If Experian were to require 100 percent matching, a great deal of accurate credit information would typically not be displayed on consumers' credit reports. This result would be detrimental to consumers who have worked hard to maintain good credit, because their credit histories might not be displayed when a creditor asks to review their credit report. Similarly, some consumers could modify part of their identification in order to hide their accurate bad credit. If successful, such consumers may be able to reestablish credit that they cannot or will not repay, which would result in losses that are passed on to consumers who pay their bills in the form of higher interest rates or lending fees.

11. A "consumer report" or "credit report" is a disclosure of credit information to a credit grantor, insurer, or employer for the purpose of evaluating a consumer's credit. Where a consumer seeks access to his or her credit information directly from a credit reporting agency, by contrast, the resulting document is called a "consumer file disclosure" or "credit file disclosure."

### Experian's Reinvestigation Procedures

12. Experian has extensive procedures in place to assure the maximum possible accuracy of its credit reports. These procedures include working with consumers to proactively prevent errors in consumer credit reports, working with credit grantors to ensure that they supply the most complete and accurate data possible, subjecting all incoming data to numerous systems and checks designed to prevent errors, and continually reviewing and refining Experian's computer systems in an ongoing effort to assure the maximum possible accuracy of Experian credit reports.

13. Experian has detailed procedures for providing consumers with access to their credit files and the means to dispute information with which they disagree. Experian has a toll-

free number, mailing address, and internet website to assist consumers obtain information, request credit file disclosures, and/or dispute information appearing in their credit files. These procedures are designed to involve the consumers in the overall process to assure the maximum possible accuracy of information in Experian's credit reports.

14. Consumers who disagree with the accuracy or completeness of any items in their credit file disclosure or a consumer credit report may submit a dispute of those items directly to Experian. When Experian receives a dispute from a consumer regarding a possible inaccuracy in that consumer's credit file, Experian institutes a "reinvestigation" to verify the accuracy of the information.

15. One way that Experian reinvestigates a disputed credit item is by sending a "Consumer Dispute Verification" ("CDV") or an "Automated Consumer Dispute Verification" ("ACDV") to the creditor who reported the information. The CDV/ACDV identifies the consumer, describes the basis for the consumer's dispute, and asks the creditor to verify or update the reported information. The creditor then returns the CDV/ACDV to Experian, instructing Experian either to leave the item as it is (because it was "verified as reported"), to delete the item, or to change or update it in some specified manner. Experian acts pursuant to the response and Experian's policies, then sends the consumer a summary reflecting the results of the reinvestigation. The summary also contains a statement regarding procedures that the consumer may follow if the consumer disagrees with the results, including contacting the furnisher of the disputed information and adding a statement to the consumer's credit file reflecting that he or she disputes the accuracy or completeness of the credit item.

16. Experian does not have access to creditors' records and lacks any direct relationship with the consumers. Any assumption on Experian's part regarding the accuracy of

credit information would be arbitrary and jeopardize the integrity of the information within Experian's system.

### **Experian's Reinvestigation of Plaintiff's Disputed Items**

17.     I understand that this lawsuit concerns two accounts with Central Financial Control ("CFC") and one account with Comcast Cable Communications ("Comcast"), which Plaintiff disputed in 2011.

<u>Central Financial Control</u>

18.     CFC reported the first disputed item to Experian in March 2007 and the second item in May 2007. (Ex. D, EXP1190.) Both items were collection accounts from Hahnemann University Hospital for $425 and $195, respectively. (*Id.*) Both entries appeared on credit disclosures that Plaintiff received from Experian for years before she disputed them. (*See, e.g.*, Ex. E, EXP1057-58 (Oct. 2, 2007).)

19.     Ms. Jones disputed the CFC credit items by telephone on January 20, 2011. (Ex. F, EXP1172-74.) Experian promptly initiated a reinvestigation by sending CFC electronic requests (ACDVs) to verify the accounts. (*Id.*; Ex. G, EXP18-19.) CFC responded by verifying that the credit items were accurate and that the same amounts remained past due. (Ex. G.) The name and social security number on the accounts matched Ms. Jones' name and social security number. (*Id.*) One account listed a Philadelphia address that had been reported as Ms. Jones' address by CFC and at least one other creditor, and the second account listed the P.O. Box in Bronx, New York that Ms. Jones had supplied, along with the Philadelphia address. (*Id.*; Ex. D, EXP1178, 1186, 1190.) Experian agents reviewed the information then processed the dispute in compliance with the FCRA. Experian informed Ms. Jones regarding the outcome of its investigation on March 3, 2011. (Ex. J, EXP98-119.) The notice stated that CFC had verified

the credit items as accurate. (*Id.* at EXP105-06.) Experian also added a consumer statement in her file reflecting that Ms. Jones disputed the accounts. (*Id.*) In addition, Experian's notice stated that if the accounts were opened as a result of identity theft, that Ms. Jones should send Experian a copy of a police report filed when reporting the crime and a copy of a government identification card and proof of her valid address. (*Id.* at EXP98.) Ms. Jones was also asked for these materials on February 20, 2011, and she was told that the "consumer reporting agency can refuse or cancel your request for a block if, for example, you don't provide the necessary documentation." (Ex. X, EXP274 ¶ 5.) There is no record that Experian ever received these materials from Ms. Jones in response.

20. After Plaintiff filed this lawsuit, Experian again sent CFC a request to verify the same two credit items. (Ex. K, EXP23-24.) On March 9, 2012, CFC responded by verifying that the accounts were accurate. (*Id.*) The credit items were later purged due to applicable retention policies and no longer appear in Plaintiff's credit file. (Ex. L.)

Comcast Cable

21. Comcast first reported its disputed credit item to Experian in April 2011. (Ex. D, EXP1184.) It was an account that was $2,956 past due and had been written off. (*Id.*) The account was opened in January 2009. (*Id.*) Ms. Jones had received credit disclosures from Experian displaying this Comcast account, yet she did not dispute it when she called Experian stating that a Lexington Avenue address was not hers. (Ex. F, EXP1169.)

22. Ms. Jones disputed the Comcast credit item on November 18, 2011. (Ex. F, EXP1168-69.) On November 25, 2013, Experian sent Plaintiff a notice advising her to contact local law enforcement for an identity theft report and to send Experian a copy of a government identification card and a utility bill or similar proof of her address. (Ex. M, EXP140-41.) There

is no record that Experian ever received these materials from Ms. Jones in response. Experian reinvestigated the disputed credit item by sending Comcast a CDV request to verify the account. (Ex. N, EXP22; Ex. F, EXP1168-69.) Comcast responded by verifying that the credit item was accurate. (*Id.*) Ms. Jones' name (spelled Keshia Jones rather than Keisha Jones), social security number, and date of birth were identified on the account, and it listed a Philadelphia address. (*Id.*) Experian agents reviewed the information from Plaintiff and Comcast, then processed the dispute in compliance with the FCRA. Experian informed Ms. Jones about the outcome of its investigation on December 9, 2011. (Ex. O, EXP162-81.) Experian updated the credit item as verified and added a consumer statement reflecting that Ms. Jones disputed the account. (*Id.*) It appears that Ms. Jones filed her lawsuit that same day.

23. There is no indication in Plaintiff's credit file that Experian ever reported the disputed credit items to a third party. There were no requests for Plaintiff's credit history or any credit reports issued within two years of her filing this action. (Ex. D, EXP1191-96.) In fact, Plaintiff placed a security freeze on her file in 2006 to preclude any such inquiries by prospective creditors, insurers, or employers. (*Id.* at EXP1196; Ex. F, EXP1150.) It appears that a collection agency, Enhanced Recovery Company, and AMEX performed "account reviews" in February 2011, but these soft inquiries involve access to only partial information for the limited purpose of reviewing the creditor's own account or other business with the consumer. There is no evidence or reason to assume that either entity accessed information concerning CFC or Comcast. And both inquires occurred before Experian completed its reinvestigation of the CFC accounts, and before Plaintiff disputed the Comcast account. (*Id.*)

24. Based on my training and experience, I believe Experian's reinvestigations of the CFC and Comcast credit items at issue were handled appropriately and complied with FCRA

procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 3, 2013

_____
Jason Scott