**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

**KEISHA JONES,**                                          **11 CV 9136 (CM) (KNF)**

       **Plaintiff,**

       **-against-**

**EQUIFAX, INC.**
**EXPERIAN INFORMATION SOLUTIONS, INC.,**
**TRANS UNION, LLC**
**BILATERAL CREDIT CORP, LLC**
**HAHNEMANN UNIVERSTIY HOSPTIAL**
**COMCAST CABLE**

       **Defendants**
----------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO <u>EXPERIAN'S MOTION FOR SUMMARY JUDGMENT</u>

Kevin Mallon
FISHMAN & MALLON, LLP
305 Broadway, Suite 900
New York, NY  10007
(212) 897-5840
consumer.esq@outlook.com

*Attorney's for the Plaintiff*
*Keisha Jones*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………   1

STATEMNT OF MATERAL FACTS…………………………………..   2

    A.  Plaintiff's Identity Theft History………………………………   2

    B.  The Disputed Accounts..........................................................................   3

        1.  CFC Account Number 472………..…………………………   3

        2.  CFC Account Number 704.......…………………………   4

        3.  Comcast Account……………………………………………   5

ARGUMENT……………………………………………………………   6

   I.       THE SUMMARY JUDGMETN STANDARD…………………   6

   II.     A REASOANBLE JURY COULD FIND THAT
           EXPERIAN WILLFULY VIOLATED THE FCRA…………..   7

  A.  The Structure of the Fair Credit Reporting Act …………………………..   7

  B.  A Reasonable Jury Could Find That Experian Failed to Conduct
     a Reasonable Reinvestigation of the CFC and Comcast Accounts………..   7

  C.   A Reasonable Jury Could Find that Experian's Violation of
     15 USC § 1681i Was Willful……………………………………………   13

   III.    PLAINTIFF IS ENTTILED TO A RECOVERY OF STATUTORY
            AND PUNITIVE DAMAGES EVEN IN THE ABSENCE OF
            ACTUAL DAMAGES…………………………………………….   16

     A.   Plaintiff Has Article III Standing Because Deprivation of
       An FCRA Statutory Right is an Actual Injury………………   16

     B.  Plaintiff Does Not Need Actual Damages to Obtain Statutory
       and Punitive Damages under the FCRA. …………………………..   19

CONCLUSION…………………………………………………………..   21

i

## TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ............................................. 6

*Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D. N.M. 2006)............ 14

*Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F.Supp.2d 965 (C.D. Cal. 2007)   19

*Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705 (6th Cir. 2009)................................ 18

*Bradshaw v. BAC Home Loans Servicing, LP, 816 F. Supp. 2d 1066 (D. Or. 2011)*......... 14, 15

*Burns v. Bank of Am.*, 655 F.Supp.2d 240, 250 (S.D.N.Y. 2008)........................................ 20

*Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)...................................................... 6

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir., 1982)........................................................ 7

*Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469 (2d Cir. 1995).................................... 19, 20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)..................................................... 6

*Cushman v. Trans Union Corp.*, 115 F.3d 220, 224-25 (3rd Cir. 1997)..................... 7, 8, 10

*Gorman v. Experian*, 2008 US Dist. Lexis 94083 at *15 (SDNY 2008)............................. 8, 14, 20

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982)................................................. 17, 18

*Henson v. CSC Credit Services*, 29 F.2d at 280, 287 (7th Cir 1994)................................... 7

*Lambert v. Beneficial Mortg. Corp.*, 2007 U.S. Dist. LEXIS 33119 at *4-5

(W.D. Wash. May 4, 2007)................................................................................................ 14

*Linda R.S. v. Richard D.*, 410 U.S. 614  (1973)............................................................. 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................................ 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)................ 7

*McMillan v. Experian*, 170 F.Supp.2d 278, (D. Conn. 2001)............................................ 13

*Northrop v. Hoffman of Simsbury, Inc.*, 12 Fed.Appx. 44 (2d Cir. 2001)........................... 19

*Ogbon v. Beneficial Credit Services, Inc.*, 2103 US Dist. Lexis 50816, (SDNY 2013)........ 11

*Okocha v. Trans Union, LLC*, 2011 US Dist Lexis 39998 (EDNY 2011)................................ 12

*Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986)...................................................... 7

*Podell v. Citicorp Diners Club Inc.*, 112 F.3d 98 (2nd Cir 1997)............................................ 10

*Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)........................................... 18

*Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083-84 (D. Ore. 2007)...................... 14

*Safeco Ins. Co. of America v. Burr*, 127  S.Ct., 2201, 2215-16 (2007)................................ 13

*Sierra Club v. Morton*, 405 U.S. 727, 738 (1972)................................................................ 17

*Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir. 1993)................................................. 8

*Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 773 (2000)................................ 17

*Warth v. Seldin*, 422 U.S. 490, 500 (1975).......................................................................... 17

## STATUTES

15 U.S.C. §1681(a)...................................................................................................... 17

15 USC § 1681i(a)……………………………………………………………….…… passim

15 USC § 1681i(a)(2)(A)................................................................................................ 8

1681i(a)(6)...................................................................................................................... 15, 16

15 U.S.C. § 1681(b)........................................................................................................ 7

15 U.S.C. § 1681(g)........................................................................................................ 7

15 U.S.C. § 1681(h)........................................................................................................ 7

15 U.S.C. §1681n........................................................................................................... 17, 19

42 U.S.C. § 3604(d)........................................................................................................ 17

NY GBL § 380-t. ............................................................................................................ 3

Fed. R. Civ. P. 56(c)....................................................................................................... 6

**<u>PRELIMINARY STATEMENT</u>**

On January 20, 2011 plaintiff Keisha Jones called Experian to inform them that they were reporting several accounts with Central Financial Control ("CFC") on her credit report that someone else opened using her identifying information.  Experian responded to these disputes by contacting CFC and informing them that plaintiff had alleged someone other than her had used her information to open accounts in her name.  CFC then confirmed to Experian that someone had used plaintiff's identifying information to open two accounts – albeit with a wrong date of birth for plaintiff and a wrong address.  Experian took this information as a verification that the accounts belonged to the plaintiff and decided to keep them on her credit report.

During the dispute process Experian refused to consider the following facts:

- One of the accounts had a wrong date of birth for the plaintiff.

- CFC provided Philadelphia addresses for the plaintiff when Experian's own files had reported that plaintiff had consistently lived in the Bronx for over 10 years and still resided in the Bronx.

- The plaintiff had repeatedly informed Experian that she was a victim of identity theft since 2002 – including sending Experian a police report and placing a security freeze on her account in 2006.

- Experian had previously removed two Philadelphia addresses from her account because they were deemed fraudulent.

- Experian later deleted an account as fraudulent that contained the same Philadelphia address used in two of the accounts disputed by plaintiff.

During the dispute process Experian further failed to contact the CFC and ask them for some proof that the plaintiff – and not an imposter – actually opened the account, such an account application, proof of identification, etc. or ask them why they had the wrong date of birth and wrong address for the plaintiff.

1

Experian's Motion for Summary Judgments asks this Court to put its stamp of approval on this Orwellian process by proclaiming that – *as a matter of law* – it constitutes a 'reasonable reinvestigation' pursuant to 15 USC § 1681i(a) of the Fair Credit Reporting Act ("FCRA"). Plaintiff respectfully requests that the motion be denied in its entirety.

**STATEMENT OF MATERIAL FACTS**

A.  Plaintiff's Identity Theft History

Plaintiff has been a repeat victim of identity theft since at least the year 2005 and likely earlier.  [Deposition of Jason Scott, 113:2-23; Def. Exh.'s Q, R and T].  She has taken extensive measures to fix the numerous erroneous accounts that have shown up on her Experian credit reports as a result of identity thieves using her information to obtain credit.

As far back as August 23, 2002 Plaintiff informed Experian that she had been a victim of identity theft and placed a security alert on her Experian credit report.  [Scott Depo. 113:12-23, Def. Exh. F, EXP-1148].  On December 29, 2002 Plaintiff added another security alert to her Experian report [Scott Depo. 115:14-20, Def. Exh. F, EXP-1148].  On June 18, 2004 Plaintiff once again notified Experian that she had been a victim of identity theft and had an initial security alert placed on her file.  [Def. Exh. F, EXP-1148].

She placed a fraud victim alert on her Experian report on February 18, 2005.  [Scott Depo. 121:11-18].   She placed a New York state security freeze on her Experian report by sending them a copy of her police report on November 17, 2006.  [Jones Depo. 186:8-18, Scott Depo. 128:6-12, EXP 1156].  A security freeze is an extreme measure  - it completely blocks anyone from accessing a consumer's credit report absent prior permission from the consumer, making it difficult for the consumer to obtain credit even for themselves.  NY GBL § 380-t.

On March 18, 2005 plaintiff disputed a fraudulent HSBC account and the fraudulent address

2

attached to that account – 7610 Gilbert Street, Philadelphia, PA.  [Scott Depo. 118:15-119:5, Def. Exh F, EXP-1156].   Experian accordingly removed that address from the plaintiff's file because it determined it did not belong to her.  [*Id*.]  Plaintiff further disputed another fraudulent Philadelphia address on her file on that date – 7209 Devon Street, Philadelphia PA – which was also removed by Experian after it determined the address did not belong to her.  [Scott Depo. 119-6:15, Def. Exh. F EXP-1156].   Experian also removed an Interstate Credit & Collection account which used another Philadelphia address – 523 W. Fisher Ave (the same address used by the fraudulent CFC accounts below) – when the furnisher was unable to verify plaintiff's information after plaintiff's disputed the account as fraudulent.  [Scott Depo. 66:6-68:11].

B.  The Disputed Accounts

1.      CFC Account Number ….472

On January 20, 2011 plaintiff called Experian to dispute an account from Central Financial Control ("CFC") (Account # 545452472) that was appearing on her credit report. [Scott Depo. 31:8-18; Def. Exh. G, EXP18].  Experian had been reporting that plaintiff owed CFC a balance of $540 for a debt initially belonging to Hahnemann University Hospital.  [*Id*.] Plaintiff informed Experian that the account was not hers and must have been opened by identity thieves using her identifying information. [*Id*].  When plaintiff called Experian she was required to provide her name, social security number, date of birth and address to Experian before they would allow her to dispute the account.  [Scott Depo. 124:7-12].

Experian promptly notified CFC of the plaintiff's dispute via an ACDV form on that same date.  [Scott Depo. 37:5-12, Def. Exh. G, EXP18].  On the following day CFC responded to the dispute by verifying that the account had been opened by someone using plaintiff's correct name and social security number, but with an 8/18/1974 Date of Birth when plaintiff's actual

3

Date of Birth was 6/24/1970, and with an address of 523 W. Fisher Ave, Philadelphia, PA when

the plaintiff's actual address was PO Box 634, Bronx NY.  [Jones Depo. 33:23-41:7, Def. Exh.

G, EXP18].  Experian's ACDV specifically stated that both the Date of Birth and address

provided by CFC were "DIFF/SUPP" from the Date of Birth and address it had on file for Ms.

Jones. [*Id.*].

    Experian never directly contacted CFC to ask about these differences.  [Scott Depo. 29:6-

30:7].  Experian never contacted CFC to ask for any documentation of the account, such as an

account application, proof of the account holder's identity, copies of bills or invoices, etc.  [*Id.*]

Experian never called or contacted plaintiff during its dispute to ask her for further information

about the disputed account. [Scott Depo. 29:6-23].   Experian never reviewed plaintiff's

extensive history of identity theft, security alerts and security freezes in conducting its

reinvestigation of this account.  [Scott 90:18-93:4].   Experian never reviewed its own file which

showed that plaintiff had lived in the Bronx – and not Philadelphia - for over 10 years prior to

the subject account being opened with a Philadelphia address.  [Scott Depo. 89:19-90:17].

Experian also refused to consider the fact that it had removed two prior Philadelphia addresses

from plaintiff's file because they had been deemed fraudulent.  [*Id*]

    On March 3, 2011 Experian mailed plaintiff the results of its "reinvestigation" to her PO

Box address in the Bronx.  [Scott Depo. 54:25-55:3, Def. Exh. J, EXP98-119].

    2.    CFC Account Number ….704

    On that same call to Experian on January 20, 2011 plaintiff  also disputed another

fraudulent CFC Account appearing on her credit report (Account # 617101704).  [Def. Exh. G,

EXP19].  That account was similar in all aspects to the other CFC account except it had a

balance of $206.  [*Id.*]  CFC responded in an identical manner as described above, except that

this account contained the plaintiff's correct date of birth.  Experian's "reinvestigation" of this

account was in all aspects identical to the "reinvestigation" it conducted on the other CFC

account – meaning it did nothing other than accept the information from CFC without question .

 [*Id.*]  On March 3, 2011 Experian mailed plaintiff the results of its "reinvestigation" to her PO

Box address in the Bronx.  [Scott Depo. 54:25-55:3, Def. Exh. J, EXP98-119].

On March 8, 2012 Experian conducted another reinvestigation of the disputed CFC

accounts in response to the lawsuit filed by plaintiff [Scott Depo. 93:5-19, Pltf. Exh. C, EXP

23].  The results of the reinvestigation were identical to the prior reinvestigations described

above, and the fraudulent accounts remained on the plaintiff's Experian report.  [Scott Depo.

103:6-11]  Experian failed to notify plaintiff of the results of these new reinvestigations.  [Scott

Depo. 103:12-104:10].

3.    Comcast Account

On November 18, 2011 plaintiff called Experian to dispute a Comcast account that Experian

was reporting on her Experian credit report.  [Scott Depo. 104:11-105:4].  Once again plaintiff

complained that someone had used her identifying information to open an account in her name

without her consent.  [*Id*., Def Exh. N. EXP22].  Experian mailed a CDV dispute form to

Comcast on that same date, informing them that the plaintiff disputed the account as fraudulent

[*Id.*]  Comcast responded by informing Experian that their account had a differently spelled first

name for Ms. Jones – Keshia instead of Keisha – and an address of 332 West Berkeley Street,

Philadelphia, PA, and no date of birth, but the plaintiff's correct social security number  [Scott

Depo. 106:3-14].

Similar to its reinvestigation of the CFC accounts, Experian failed to contact either

Comcast or the plaintiff during the dispute period to seek further information, failed to take

notice of the plaintiff's lengthy address history in the Bronx, NY, or of the fraudulent

Philadelphia addresses it had previously removed from the plaintiff's file, or of the many

notifications that plaintiff had previously provided stating that she had been a victim of identity

theft. [Scott Depo. 107:20-108:24]. The result of its "reinvestigation" was that Experian kept

the account on the plaintiff's credit report, sending her the notification of the results to her PO

Box address in the Bronx on December 9, 2011. [Def. Exh. O, EXP162-163].

At some point after March 8, 2012, despite the fact that Experian had twice refused to

remove the subject CFC and Comcast accounts after conducting reinvestigations of the plaintiff's

fraud allegations, Experian removed the accounts from plaintiff's file [Mallon Decl. ¶ 6, Exh. D].

Experian does not know why it ultimately removed the accounts from the plaintiff's report. [Scott

Depo. 111:2-21].


## ARGUMENT

### I.      THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "[T]he moving party bears the

initial burden of establishing that there are no genuine issues of material fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *See also Celotex Corp.*, 477 U.S. at 323. In

making a summary judgment determination, the court must resolve all "facts, inferences and

ambiguities in a light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

6

## II.   A REASONABLE JURY COULD FIND THAT EXPERIAN WILLFULLY VIOLATED THE FCRA

### A.   The Structure of the Fair Credit Reporting Act

The FCRA imposes responsibilities on three categories of persons: "users," "credit reporting agencies," and "furnishers."  "Credit reporting agencies" are subject to most of the requirements within the FCRA.  The statute details to whom and how a credit report may be delivered (15 U.S.C. § 1681(b)); the disclosures required from the credit reporting agencies (15 U.S.C. § 1681(g) and how these may be made (15 U.S.C. § 1681(h)).  And the FCRA establishes a detailed procedure by which a consumer may dispute inaccurate information within their credit files (15 U.S.C. § 1681(i)).  Plaintiffs' First Amended Complaint alleges that Experian violated 15 USC § 1681i by failing to conduct a 'reasonable reinvestigation' of certain accounts which she claimed were opened by identity thieves.

### B.   A Reasonable Jury Could Find that Experian Failed to Conduct a Reasonable Reinvestigation of the CFC and Comcast Accounts

Experian argues that it's only obligation under 15 USC § 1681i is to forward the contents of a consumer dispute to the furnisher of the information and then report the results returned by the furnisher.  That argument has been rejected by the Third, Fifth, Sixth and Seventh Circuit Courts of Appeal, which have imposed upon credit reporting agencies a duty to conduct a "reasonable" reinvestigation. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 224-25 (3rd Cir. 1997); *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986); *Bryant v. TRW Inc.*, 689 F.2d 72, 79 (6th Cir. 1982); *Henson v. CSC Credit Services*, 29 F.2d at 280, 287 (7th Cir 1994).  "The grave responsibility imposed by section 1681i(a) must consist of something more than merely parroting information received from other sources.  Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligation

7

contemplated by the statute." *Cushman*, 115 F.3d at 220. "In a reinvestigation of the accuracy

of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of

information obtained from subscribers." *Stevenson v. TRW, Inc.,* 987 F.2d 288, 293 (5th Cir.

1993).

"Experian contends that, because they sent an ACDV to HSBC in order to verify the

information, and they accurately reported the information they received from HSBC, there is no

genuine issue of material fact before the Court.  Two federal circuits have held, however, that the

reinvestigation required by section 1681i(a) demands more than (a) forwarding the dispute

information onto the furnisher of information and (b) relying on the furnisher of information's

response." *Gorman v. Experian*, 2008 US Dist. Lexis 94083 at *15 (SDNY 2008)*.

Moreover, if Experian's interpretation were correct that would render 15 USC §

1681i(a)(2)(A) and (B) irrelevant.  Those sections explain how the Credit Reporting Agency

("CRA") must forward all relevant information to the furnisher and then report the results back

to the consumer.  If that's all that was required for a "reasonable reinvestigation" then there

would no need to state that CRA's must *both* forward all relevant information about the dispute

to the furnisher *and* conduct a reasonable reinvestigation of the consumer's dispute.  See 15 USC

§ 1681a(1)(A).

Accordingly, a Experian cannot merely "parrot" the results of the furnishers' reinvestigation

- it must conduct its own independent reinvestigation.  Yet that is precisely what Experian did in

this case, where it freely admits that it did absolutely no independent reinvestigation of its own –

and instead merely re-reported the information provided by CFC and Comcast regarding the

disputed accounts. (Jones Dep. 78:3-18).  Specifically, Experian's  "reinvestigation" refused to

consider the plaintiff's lengthy confirmed history as a victim of identity theft, refused to consider

her lengthy history of residing in the Bronx when the disputed accounts utilized a Philadelphia

address, refused to consider the fact that Experian had previously removed at least two

fraudulent Philadelphia addresses from the plaintiff's file, and refused to consider that CFC

reported a wrong date of birth on one of the disputed accounts.

> Q:  So Experian's policies and procedures would not be to review things like the plaintiff's entire address history to see if this account should remain on her report or not, correct?
>
> A:  **It's my understanding that the prior history, the prior address history would not come into play if it were not – if it was not given on this ACDV response.**
>
> Q:  It wouldn't, in that Experian's policies and procedures would took at anything about how long the plaintiff had reported fraud in various manner to Experian, correct?
>
> A:  **In the ACDV response, again, it's really looking at the information provided by the consumer and the information received back from the data furnisher . . . .  Complaints and allegations of identity theft would not be – it really wouldn't be pertinent because an allegation cannot simply block information form a consumer disclosure.**

Depo. of Jason Scott, 90:10-25, 92:2-5.

Experian's decision to merely "parrot" the information it received from CFC and

Comcast is particularly unreasonable because the plaintiff explained to Experian that identity

thieves had opened those accounts in her name.  Thus, Experian's reinvestigation was a four-step

Catch-22 that went something like this:

1.   Plaintiff calls Experian to inform them that someone has used her identifying information to open accounts in her name;

2.  Experian asks CFC and Comcast if anyone has opened an account using plaintiff's identifying information;

3.  CFC and Comcast report that someone used plaintiff's identifying information to open accounts with them (with a wrong date of birth and address mis-spelled first name);

4.  Experian confirms that accounts were opened with CFC and Comcast using the plaintiff's

identifying information and decides to keep those accounts on her credit report. While this farce might make a good scene in a George Orwell novel, to hold that this constitutes 'reasonable reinvestigation' as a *matter of law*, as Experian requests, would make a mockery of a CRA's responsibilities under section 1681i(a).

Experian's decision to mail the results of plaintiff's dispute to her Bronx P.O. Box while confirming a fraudulent account with a Philadelphia address is equally bizarre. If Experian believed plaintiff lived in Philadelphia it would have been completely reckless to mail her a copy of her credit report to an address in the Bronx. And finally, the ultimate irony in Experian's reinvestigation is that it required Plaintiff to provide her correct date of birth and address to commence the dispute of the CFC account, but did not require CFC to have her correct date of birth and address to verify that account. *In fact, had plaintiff called Experian to dispute the CFC account and provided the date of birth and address contained on the CFC account it would have refused to commence a dispute because plaintiff would not have properly identified herself!* Yet somehow Experian incredibly asks this Court to review these facts and find that they constitute a reasonable reinvestigation *as a matter of law*.

Contrary to Experian's assertions, nothing in *Podell v. Citicorp Diners Club Inc.*, 112 F.3d 98 (2nd Cir 1997) supports its argument. *Podell* did not involve the reasonable of a CRA's reinvestigation, but rather an allegation that the plaintiff there was never sent the results of its reinvestigation – an allegation the plaintiff himself admitted was false. *Id*. at 102. "As the consumer in *Podell* never took issue with the reasonableness of the scope of the consumer reporting agency's reinvestigation, the Court of Appeals for the Second Circuit had no occasion to address this issue." *Cushman,* 115 F.3d at 225.

Experian's attempt to blame plaintiff for its failure to conduct any  meaningful

reinvestigation of the disputed accounts also fails.  Despite repeated protestations to the contrary,

Experian *never* contacted plaintiff during the reinvestigation to ask for supporting material such

as identity theft report or government identification.  Experian only contacted plaintiff *after* it

had already completed its reinvestigation of her accounts.  [Def. Exh J, EXP98-119].

Accordingly, nothing plaintiff did or failed to do *after* Experian completed its reinvestigation of

her disputed accounts could have had any impact on Experian's reinvestigation.  Furthermore,

it's hard to see how providing the requested information would have changed the results of

Experian's' reinvestigation, since the plaintiff had previously sent Experian a copy of her police

report (and the reason she did not send another one is that the NYPD refused to allow her to file

subsequent reports stemming from the same case of identity theft) [Jones Declaration ¶ 4] and

Experian already had her identifying information contained on her driver's license.

　　　　Defendant's claim that plaintiff did not properly identify herself to Experian is simply

wrong.  When plaintiff called Experian, she was required to provider her name, date of birth,

social security number and address before Experian would process her dispute.  [Scott Depo.

124:7-12].  Only after providing Experian with all of this correct information did Experian send

ACDV's to CFC and Comcast.  [Def. Exh's G, N].  *Ogbon v. Beneficial Credit Services, Inc.*,

2103 US Dist. Lexis 50816, (SDNY 2013) provides no support for Experian's argument.  The

CRA in that case refused to conduct a reinvestigation because plaintiff did not provide it "with

sufficient identifying information to investigate the disputed credit information, thereby

triggering defendant's duty to reinvestigate."  *Id*. at *26.  Additionally, the Court dismissed

plaintiff's claims because "even assuming Ogbon had sufficiently proven her identity, Trans

Union had very little data to work with because Ogbon's correspondence never provided

concrete information as to which charged she sought to dispute."  *Id*. at 30.

In the present case there is no question that plaintiff provided Experian with sufficient identifying information to conduct a reinvestigation.  Unlike the CRA in *Ogbon*, Experian never informed Ms. Jones that it could not conduct a reinvestigation under 15 USC § 1681i because it could not identify her or which accounts she wanted to dispute.  To the contrary, Experian was able to locate both the plaintiff's file and the accounts she wished to dispute – and does not argue the contrary.  Thus any argument that plaintiff failed to sufficiently identify herself is spurious.

Experian also attempts to rely upon the related case of *Okocha v. Trans Union, LLC*, 2011 US Dist Lexis 39998 (EDNY 2011), which was brought on behalf of the plaintiff's counsel in *Ogbon*.  That case was nothing like the present one because the disputes involved there were purely legal disputes "that turned on questions of law that Defendants could not have possibly resolved through a reinvestigation."  *Id.* at *19.  "Thus, Plaintiff did not raise any significant factual challenge to the accuracy or reliability of the original source of the reported information, *nor did he make any actual allegations of fraud*." *Id.* at *21 (emphasis added).  In fact Experian's attempt to rely on such wholly inapposite cases involving a rogue lawyer (who was severely admonished by Judge Eneglmayer in the *Ogbon* decision) reveals the lack of legal support for its position here.

Finally, Experian makes the novel argument that since the plaintiff had other derogatory tradelines on her credit report it had no duty to conduct a reasonable reinvestigation of the disputed accounts because even if they stayed on her credit report she wouldn't be harmed by them.  Needless to say Experian fails to cite a single decision supporting their idea for a two-tiered reinvestigation standard: a higher standard for those with good credit and a lower one for those with bad credit.  The idea is as offensive as it is meritless, and if adopted would result in a system where wealthy people who are able to pay their bills on time were entitled to a more

thorough dispute process than the less affluent who have fallen behind on their debts.  The concept should be rejected outright by the Court, as the presence of multiple fraudulent accounts would significantly impact plaintiff's credit report regardless of other negative items on her report.

C.   A Reasonable Jury Could Find that Experian's Violation of 15 USC § 1681i Was Willful

The proper standard for willful claims under the FCRA was established by the Supreme Court in *Safeco Ins. Co. of America v. Burr*, 127  S.Ct., 2201, 2215-16 (2007).  The *Safeco* decision rejected the argument that a willful violation had to intentional and held that "willful failure [under the FCRA] covers a violation committed in reckless disregard" for the FCRA's requirements.  *Id*. at 2203.  "[Defendants] argue that liability under section 1681n(a) for 'willfully failing to comply' with FCRA goes only to acts known to violate the Act, not to reckless disregard of statutory duty, but we think they are wrong.."  *Id.* at 2208. "This standard civil usage though counsels reading section 1681n(a)'s phrase "willfully fails to comply" as reaching reckless FCRA violations . . . " *Id*. at 2203.

Thus in order to prove willfulness at trial in this case plaintiff must merely show that Experian "recklessly disregarded" its obligations to conduct a reasonable reinvestigation here.  A number of decision with factual situations very similar to the present one have found that a jury, and not the Court, should determine whether a defendant's conduct willfully violated the FCRA.

*McMillan v. Experian*, 170 F.Supp.2d 278, (D. Conn. 2001) involved an FCRA claim against Experian where the plaintiff's Experian file was mixed with that of his son.  The Court found that a jury could find that an investigation nearly identical to the one the occurred met the "reckless disregard standard" (albeit in relation to a defamation claim).

Construing the facts most favorably to plaintiff, Associates' sole investigation

13

> involved comparing plaintiff's name and Social Security number to that of the
> account holder, and reporting the account as belonging to plaintiff, when in fact
> the account holder had *a different address,* phone number, *date of birth,*
> employment address and work phone number. Although these facts are sparse, in
> the absence of any unrebutted evidence from Associates as to the reasonableness
> of its actions in reporting the account as belonging to plaintiff, *the Court cannot
> say that no jury could conclude that Associates acted with reckless disregard* for
> the truth or falsity of the information it reported.

Id. at 278 (emphasis added).

*Gorman v. Experian*, *supra*, was an FCRA action against Experian which involved nearly identical reinvestigation procedures to those used by Experian in this case.  Experian's procedures in *Gorman* once again consisted merely of sending and ACDV to the furnisher and parroting those results back onto the consumer's credit report.  *2008 US Dist Lexis at *16.*  The Court found that a reasonable jury could find that such "parroting" could be considered a willful violation of section 1681i(a).  "Given the evidence regarding the accuracy of Experian's report and the reasonable of their procedures . . . a jury could find that Experian showed a reckless disregard for the requirements of section 1681e(b) and 1681(i)."  *Id*. at *24.

There have been numerous other decisions to the same affect.  "Many courts, including this one, have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information  through the ACDV process without additional investigation."  *Bradshaw v. BAC Home Loans Servicing*, 816 F.Supp. 2d 1066, 1073-74 *(citing Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1083-84 (D. Ore. 2007) (discussing cases); see also *Cushman*, 115 F.3d at 225 ("The 'grave responsibility' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D. N.M. 2006) (noting that CRAs may not rely on automated procedures that make only superficial inquiries once the consumer has

notified it that the information is disputed); *Lambert v. Beneficial Mortg. Corp.*, 2007 U.S. Dist.

LEXIS 33119 at *4-5 (W.D. Wash. May 4, 2007) (finding a question of fact as to whether the

ACDV sent by the CRA contained sufficient information to comply with its reinvestigation

duties).

"Here, defendants elected to comply with their FCRA obligations by providing general

descriptions of plaintiffs' dispute through an automated system. As this court explained in *Saenz*,

a reasonable jury could find that a CRA acted in reckless disregard of its duties by relying

exclusively on automated procedures that have been held to be unreasonable by numerous court

decisions when the CRA was on notice of the possible inaccuracy of the automated responses.

Therefore, this claim must also be decided by a jury."  *Bradshaw, supra*, 816 F.Supp.2d at 1076.

> D.  Experian's Reinvestigation Based on the Plaintiff's Lawsuit Willfully Violated
> the FCRA

The plaintiff served Experian with a copy of her initial complaint on February 16, 2012.

[Declaration of Joseph Strazzeri, ¶ 3].  The service of the complaint should have triggered an

investigation pursuant to 15 USC § 1681i(a) because it was a) a dispute by the consumer, b)

where the consumer notified Experian directly.  Defendant waited until March 8, 2012 to begin

its reinvestigation of plaintiff's CFC dispute.  [Def. Exh. K, EXP 24].  Accordingly, Experian

violated 15 USC § 1681i(a)(1)(A) by waiting more than five days to begin the reinvestigation.

More troubling was the fact that Experian intentionally refused to send the results of that

reinvestigation to plaintiff.  [Scott Depo. 103:12-18].  Experian argues that it had no obligation

to inform plaintiff of the results of the reinvestigation because it was done "at the direction of

counsel."  [Scott Depo. 103:22-25].  When asked why Experian did not feel a need to comply

with the requirements of section 1681i(a) when conducting the March 8, 2012 reinvestigation of

the plaintiff's CFC account, Experian's representative stated: "I'm not really certain why that

15

is." [Scott Depo. 98:6-99:3].   Even if the Court were to find that plaintiff's complaint did not

trigger Experian's responsibility to conduct a reinvestigation under 1681i(a), once it decided to

conduct a reinvestigation the Court should find that at as a matter of public policy - consistent

with the intent of the FCRA in general and section 1681i(a) specifically – that Experian was

legally required to provide plaintiff with notice of the dispute per 1681i(a)(6).

Since Experian intentionally refused to send the plaintiff the results of its violation of 15

USC § 1681i(a)(6) was willful *as a matter of law* and *plaintiff* should be granted summary

judgment on this issue.  Or, at the very minimum, a jury should be allowed to determine if

Experian's violation of 15 USC § 1681i(a)(6) was willful.

**III.    PLAINTIFF IS ENTITLED TO A RECOERY OF STATUTORY AND PUNTIVE DAMGES EVEN IN THE ABSENCE OF ACTUAL DAMAGES**

Defendant's argument that Plaintiff is not alleging the requisite actual damages to confer

standing and to state a claim under the FCRA is without merit and appears to be based upon a

fundamental misreading of the relevant statute, a distorted and misconstrued framing of the

argument and a disregard for the relevant judicial authority.   Moreover, to the extent that it

matters, although plaintiff is barred from seeking actual damages in this case because she lacked

any credit denials, she did suffer damages from Experian's violation of the Act, including being

deterred from obtaining credit and housing along with emotional distress damages.  [Jones Decl.

¶ 5].  The plaintiff may not be able to legally recover those damages in this action, but that does

not make them any less real.

A.    Plaintiff Has Article III Standing Because Deprivation Of An FCRA
        Statutory Right Is An Actual Injury

Defendant's statutory violation of the FCRA is an actual injury to Plaintiff sufficient to

confer Article III standing.  Defendant's argument to the contrary is premised upon the holding

in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) which states that a plaintiff has standing only where "(1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Id.* at 560-61. Defendant bases its conclusion that Plaintiff lacks standing on the erroneous assumption that Plaintiff has not suffered an injury in fact. However, as demonstrated below, this conclusion is in stark contrast to well-established judicial precedent.

The purpose of the FCRA is to "insure that consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumer credit] with fairness, impartially and a respect for the consumer's right to privacy." 15 U.S.C. §1681(a).  As a means to safeguard this vital consumer protection, in the FCRA Congress explicitly identified consumers' personal interest in a substantive statutory right to credit services free from inaccurate or unsubstantiated reports and authorized a private cause of action to redress the harm caused by violations of this right. 15 U.S.C. §1681n.

It is undisputed that Congress has the authority to create redress for statutory violations by "defin[ing] new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 773 (2000); see also, e.g., *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing….' "); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."); *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972) (Congress may "broaden[] the categories of injury that may be alleged in support of standing"); *Havens*

17

*Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

In *Havens*, the Court addressed an analogous question to the one at hand. This case involved alleged violations of Section 804(d) of the Fair Housing Act, which makes it unlawful to discriminate against protected classes in the inspection, sale, or rental of housing. 42 U.S.C. § 3604(d). The plaintiffs in Havens were individuals who were not actual homebuyers, but rather consumers "pos[ing] as renters or purchasers for the purpose of collecting evidence of unlawful steering practices." 455 U.S. at 373. Under the misguided theory proposed by defendant in this motion, the *Havens'* plaintiffs claim would fail for lack of Article III standing. However, in *Havens* the Court explicitly rejected this argument on the basis that the statute in question created an "enforceable right to truthful information" and that plaintiffs had been harmed by virtue of their deprivation of that statutory right, thereby satisfying Art. III's injury requirement. *Id.* at 373-74; *see also 18* (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

Just as the FHA creates an enforceable right to accurate information regarding the availability of housing, the FCRA provides the same for the right to receive an accurate credit report. This includes the right to dispute information and have that dispute properly investigated and verified. 15 USC § 1681i. The deprivation of this statutory right is, in itself, an actual injury to the consumer, regardless whether the consumer suffers additional consequential damages. *See Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 705 (6th Cir. 2009) ("The Fair Credit Reporting Act does not require a consumer to wait for … consequential harm before enforcing her statutory rights").

Here, Experian violated 1681i of the FCRA by failing to conduct a reasonable reinvestigation of Plaintiff's disputed credit accounts. Defendant's erroneous claim that this

allegation does not constitute an actual injury is based on a limited and misguided interpretation

of the law and accepting it would require overturning decades of settled precedent.  As

demonstrated above, Defendant's violation of the FCRA is an injury in fact to Plaintiff.   Since

the allegations in plaintiffs complaint arise out of a series of transactions between plaintiff and

Experian there is a clear causal connection between the injury and conduct in question.

Furthermore, Congress specifically created the private right to action under the FCRA to give

redress to plaintiffs who have been harmed in this manner.  Thus, even under the *Lujan* standard

advocated for by Defendant, Plaintiff's claim fulfills all of the requirements to confer Article III

standing.

      B.    <u>Plaintiff Does Not Need Actual Damages to Obtain Statutory and Punitive</u>
           <u>Damages under the FCRA.</u>

      Section 1681n of the FCRA explicitly allows for statutory damages for willful violations

of the statute, regardless if actual damages are present. The relevant portion of the FCRA states:

> "Any person who ***willfully fails to comply*** with any requirement imposed under
> [the FCRA] ***with respect to any consumer*** is liable to that consumer in an amount
> equal to the sum of . . . any actual damages sustained by the consumer as a result
> of the failure OR damages of not less than $100 and not more than $1000." 15
> USC § 1681n (emphasis added).

      Despite Experian's illogical attempt to state otherwise, the plain language of the FCRA

clearly confers this right.  The requirements stated in 1681n are: (1) a willful failure to comply

with the FCRA and (2) the failure must be with respect to a consumer.  As explicitly stated in the

statute, if both those requirements are met, then the offending party is liable for either actual *or*

statutory damages.  This section makes no mention or implication of a requirement of actual

damages for a consumer to have standing to claim statutory damages. *See Arcilla v. Adidas*

*Promotional Retail Operations, Inc.*, 488 F.Supp.2d 965, 974 (C.D. Cal. 2007) ("[T]he only

conceivable interpretation of [FCRA 1681n] is that a consumer whose FCRA rights have been

violated may elect either actual or statutory damages, with no requirement of having to present evidence of actual harm.").

Furthermore, the Second Circuit has clearly stated that actual damages are not required to support a willful damage claim under FCRA 1681n. *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995) ("As appellant carefully points out, punitive damages may be available even where a plaintiff has sustained no actual damages"); *Northrop v. Hoffman of Simsbury, Inc.*, 12 Fed.Appx. 44, 50; 2001 U.S.App.LEXIS 13728 (2d Cir. 2001) ("[Under FCRA1681(n)], [a]ctual damages are not a statutory prerequisite to punitive damages."); *Gorman v. Experian Info. Solutions, Inc.*, supra, 2008 U.S. Dist. LEXIS 94083 (S.D.N.Y. 2008) ("Even if Plaintiff is not entitled to "actual damages," he may still be entitled to punitive damages based on sufficient proof that [the defendant] willfully violated various provisions of the FCRA"); *Boothe v. TRW Credit Data*, 557 F.Supp.66, 71-72 (S.D.N.Y. 1982).

The only cases Defendant cites in support of its argument that carry any precedential weight on this Court explicitly distinguish the actual damages requirement inherent in FCRA 1681o from the lack thereof in FCRA 1681n. *See Casella*, 56 F.3d at 476 ("[P]unitive damages may be available even where a plaintiff has sustained no actual damages. See 15 U.S.C. § 1681n(2); *Boothe, supra,* 557 F. Supp. at 71-72. The District Court found that appellant had presented no evidence that either Equifax or Trans Union acted willfully in failing to delete the San Diego entry or to include appellant's statement of dispute in his consumer credit file. Thus, the Court concluded, Casella could not receive punitive damages. We agree that the record is devoid of any evidence supporting a theory of willful noncompliance."); *Burns v. Bank of Am.*, 655 F.Supp.2d 240, 250 (S.D.N.Y. 2008) ("Liability under the FCRA attaches for both negligent violations, *which require a showing of actual damages*, 15 U.S.C. § 1681o, and willful

20

violations, for which statutory and punitive damages are available. *See* 15 U.S.C. § 1681n.").

In this case, a reasonable jury could find that Experian's egregious lack of any reasonable investigation of Plaintiff's credit disputes constitutes a *willful* violation of 1681i, and thus bestowed on plaintiff the right to statutory and punitive damages under section 1681n.

## CONCLUSION

For the foregoing reasons, the plaintiff prays the Court to deny Defendants' Motion for Summary Judgment and for such other relief the Court finds just and proper.

Dated: June 4, 2013

Respectfully Submitted,

*Kevin Mallon*

Kevin Mallon
FISHMAN & MALLON, LLP
305 Broadway, Suite 900
New York, NY 10007
(212) 897-5840
*Attorneys for Plaintiff Keisha Jones*

21