UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEISHA JONES,<br><br>               Plaintiff,<br><br>      -against-<br><br>EQUIFAX, INC., et al.<br><br>              Defendants. | Civil Action No.  11-9136<br>(CM) (KNF) |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S
<u>REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

                                                        Joseph A. Strazzeri
                                                        Briana R. Hulet
                                                        JONES DAY
                                                        222 East 41st Street
                                                        New York, New York 10017
                                                        Telephone:  (212) 326-7894
                                                        jastrazzeri@jonesday.com

                                                        *Attorneys for Defendant
                                                        Experian Information Solutions, Inc.*

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 2 |
| I. | Plaintiff Has Not Shown that Experian Willfully Failed to Conduct a Reasonable Reinvestigation | 2 |
|    | A. Experian's Reinvestigations Were Reasonable as a Matter of Law | 2 |
|    | B. Plaintiff Has Not Shown Willful Noncompliance | 7 |
| II. | Plaintiff Concedes that Experian Never Furnished an Inaccurate Credit Report to Any Third Party | 8 |
| III. | Plaintiff's New Claim Alleging Post-Suit Violations Is Barred and Fails as a Matter of Law | 8 |
| IV. | Plaintiff Lacks Article III Standing | 9 |

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Farm Bureau v. U.S. E.P.A.*,
   121 F. Supp. 2d 84 (D.D.C. 2000) ..................................................................................10

*Anderson v. Trans Union*,
   367 F.Supp.2d 1225 (W.D. Wisc. 2005)............................................................................6

*Animal Legal Def. Fund, Inc. v. Espy*,
   23 F.3d 496 (D.C. Cir. 1994)...........................................................................................10

*Apodaca v. Discover Fin. Servs.*,
   417 F. Supp.2d 1220 (D.N.M. 2006) .................................................................................8

*Avillan v. Donahoe*,
   483 Fed. Appx. 637 (2d Cir. 2012)....................................................................................9

*Bagby v. Experian*,
   162 Fed. Appx. 600 (7th Cir. 2006)...................................................................................4

*Bradshaw v. BAC Home Loans Servicing*,
   816 F. Supp. 2d 1066 (D. Or. 2011) ..................................................................................8

*Casella v. Equifax*,
   56 F.3d 469 (2d Cir. 1995).........................................................................................8, 11

*Cushman v. Trans Union*,
   115 F.3d 220 (3rd Cir. 1997) .............................................................................................8

*Fashakin v. Nextel Comms.*,
   No. 05-CV-3080, 2009 WL 790350 (E.D.N.Y. Mar. 25, 2009)........................................8

*Gorman v. Experian*,
   2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008)...................................................................8

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982).........................................................................................................10

*Lambert v. Beneficial Mortg. Corp.*,
   2007 U.S. Dist. LEXIS 33119 (W.D. Wash. May 4, 2007)...............................................8

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973).........................................................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 10

*McMillian v. Experian*,
    170 F.Supp.2d 278 (D. Conn. 2001) ..................................................................... 7, 8

*Morris v. Trans Union*,
    420 F. Supp. 2d 733 (S.D. Tex. 2006) ....................................................................... 4

*Ogbon v. Beneficial Credit Servs.*,
    2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013) .......................................................... 6, 7

*Okocha v. Trans Union*,
    2011 WL 2837594 (E.D.N.Y. Mar. 31, 2011) ........................................................ 3, 4

*Perry v. Experian*,
    2005 WL 2861078 (N.D. Ill. Oct. 28, 2005) .............................................................. 4

*Podell v. Citicorp Diners Club, Inc.*,
    112 F.3d 98 (2d Cir. 1997) ......................................................................................... 3

*Robins v. Spokeo, Inc.*,
    No. 10-CV-05306, 2011 WL 597867 (C.D. Cal. Jan. 27, 2011) .............................. 10

*Saenz v. Trans Union*,
    621 F. Supp. 2d 1074 (D. Or. 2007) ........................................................................... 8

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) ..................................................................................................... 7

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ................................................................................................. 10

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................. 10

*Vt. Agency of Nat. Res. v. United States*,
    529 U.S. 765 (2000) ................................................................................................... 9

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................................... 9

*Whelan v. Trans Union*,
    862 F. Supp. 824 (E.D.N.Y. 1994) ............................................................................. 9

In her opposition, Plaintiff failed to dispute any material fact or proffer any evidence that Experian willfully violated the Fair Credit Reporting Act ("FCRA"). She concedes that Experian did not report the disputed credit items to third parties, and she offers no proof of any actual damages.

This case is simply a strike suit rooted in Plaintiff's frustration that Experian would not remove negative credit items from her file simply because she called and said they were not hers. She argues that the accounts should have been removed because they list an address other than the P.O. Box that she provided. If this were the policy, anyone could easily evade negative credit history by opening a post office box and disclaiming accounts unassociated with it, which would have detrimental costs to all consumers. Ms. Jones refused to provide Experian with the materials required under FCRA 1681c-2(a) to block fraudulent information, including a police report and proof of her identity, even though she testified that an Experian agent insisted that she contact the police and supply a report. The creditors verified the disputed accounts, which were opened under Plaintiff's name and social security number. Other creditors had reported that Ms. Jones lived at various street addresses in Philadelphia since at least 2002, as well as an address where Ms. Jones admits she lived in North Carolina. It cannot be said to be an objectively unreasonable interpretation of the FCRA for Experian to keep these credit items in her file with a note indicating that she disputes them.

Nonetheless, Plaintiff has no Article III standing to bring this action and her FCRA claims fail because she produced no evidence of any actual injury. She has not shown that Experian reported the credit items to any third parties, or that the disputed items, and not Plaintiff's bankruptcy filing and substantial negative credit history, proximately caused any such damages. Accordingly, Plaintiff's claims fail as a matter of law.

# ARGUMENT

## I. PLAINTIFF HAS NOT SHOWN THAT EXPERIAN WILLFULLY FAILED TO CONDUCT A REASONABLE REINVESTIGATION

To recover, Plaintiff must not only show that Experian's reinvestigation was unreasonable, she must prove that any failure to conduct a reasonable reinvestigation was *willful*. Plaintiff has proffered no evidence that Experian's conduct was unreasonable, let alone willful.

### A. Experian's Reinvestigations Were Reasonable as a Matter of Law

Plaintiff claims that Experian's reinvestigations were unreasonable because she argues that Experian "merely parroted" the CDV/ACDV responses from CFC and Comcast. (Pl's MOL at 8-9.) First, this characterization is a distortion of the record. Experian did not merely "parrot" the creditors' responses, which means to repeat without thought. Rather, Experian's agents reviewed and considered the information that Plaintiff, CFC, and Comcast provided, along with information in Plaintiff's credit file, and made a determination that the disputed accounts aligned to the extent necessary, in the absence of any supporting materials from Plaintiff, to remain in her credit file with a statement that she disputes them. CFC had verified the accounts as accurate and updated certain details concerning the debt. (Ex. G, EXP18-19.) The name and social security number on the accounts matched the information that Ms. Jones provided. Both accounts listed a Philadelphia address that at least one other creditor reported, and one of the accounts also listed Plaintiff's Bronx P.O. Box number. (Ex. D, EXP1178, 1186, 1190 & Ex. G, EXP19).[1] Comcast also responded that its account was "Verified as Reported." (Ex. N, EXP22.) The name (slightly misspelled Keshia Jones), social security number, and year of birth on the

---

[1] In response to Experian's Rule 56.1 Statement, Plaintiff denied that one of CFC accounts listed Ms. Jones' Bronx P.O. Box. However, the document that Plaintiff cites (Ex. G) as well as the "Admin Report" (Ex. D) both show that CFC Account No. 617101704 listed "P.O. Box 634, Bronx, NY" (A=0019528216, denoted in the ADCV by marking Curr Addr Flag as "Same") as well as the Fischer Avenue address (A=0040249529).

2

account matched the information that Plaintiff provided. Experian agents reviewed the information and processed the disputes according to FCRA requirements. (Scott Decl. ¶¶ 19 & 22.) Plaintiff has produced no evidence to the contrary. Experian reported the results of its reinvestigations to Ms. Jones, instructed that she contact the creditors directly if the accounts were opened as a result of identity theft, and requested that she send a copy of a police report filed when reporting the crime along with valid government identification and proof of her address. Plaintiff never provided these materials in response. Experian also added a consumer statement to Plaintiff's file stating that she disputed the accounts. Thus, the record shows that Experian did more than simply parrot the responses from CFC and Comcast.

Nevertheless, Plaintiff has not established that relying on the CDV/ACDV responses from CFC and Comcast would be unreasonable. The Second Circuit has described the CDV/ACDV reinvestigation procedure as compliant with the FCRA. *See Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98 (2d Cir. 1997). In *Podell*, the CRA continued reporting the disputed account because the creditor had responded that it was reported accurately. *Id*. at 102. Plaintiff here argues that the case "did not involve the reasonable [*sic*] of a CRA's reinvestigation." (Pl's MOL at 10.) However, the Second Circuit reviewed the ACDV process and affirmed summary judgment dismissing the action because the plaintiff "failed to demonstrate a genuine material question regarding [the CRA's] compliance with the *reinvestigation procedures* of FCRA." *Id.* at 104 (emphasis supplied). The CDV/ACDV procedure was also recently examined in *Okocha*, and the court found that it fulfilled the CRA's obligations to reasonably reinvestigate. *Okocha v. Trans Union*, 2011 WL 2837594, at *6 (E.D.N.Y. Mar. 31, 2011). Plaintiff argues that the case is distinguishable because the claimed inaccuracies involved legal disputes, however the court continued: "In any event, even if the accounts were reported inaccurately, Plaintiff has failed to produce any evidence indicating that

3

Defendants failed to discharge their duty to reinvestigate the disputes in a reasonable manner." *Id*. at *7.

Without any support from the Second Circuit, Plaintiff turns to other circuits. However, those circuits have held only that CRAs may be required to go beyond the original source in certain circumstances where the consumer has alerted the CRA that the source itself may be unreliable or the CRA knows or should know that the source is unreliable. *See, e.g., Bagby v. Experian*, 162 Fed. Appx. 600, 606 (7th Cir. 2006). Those courts have also held that the determination will depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer. *Id*. Here, Plaintiff presented no evidence that CFC or Comcast were unreliable sources, and there was no harm to Plaintiff to weigh in the balance (the items were never published in a credit report). Thus, even under the standard applied in those other circuits, Experian's reinvestigation was reasonable as a matter of law. *See Bagby*, 162 Fed. Appx. at 606 (holding CDVs sufficient without evidence that Sears or Discover were unreliable sources); *Morris v. Trans Union*, 420 F. Supp. 2d 733, 739 (S.D. Tex. 2006); *Perry v. Experian*, 2005 WL 2861078, *7-8 (N.D. Ill. Oct. 28, 2005).

Without any legal support, Plaintiff includes some additional arguments in an attempt to portray Experian's reinvestigations as unreasonable. First, Plaintiff argues that Experian should have asked CFC and Comcast for documentary evidence that Plaintiff herself opened the disputed accounts, such as a credit application. (Pl's MOL at 4.) However, Plaintiff cites absolutely no authority requiring credit reporting agencies to conduct such vigorous and intrusive investigations. Experian is not in the position to collect confidential documents from the creditors and analyze credit applications and similar materials concerning the multitude of disputes that it receives daily, nor are they required to do so under the FCRA. Creditors are

responsible for the "investigation," not the credit reporting agencies, which lack any direct relationship with the consumer and access to the creditor's records.

Plaintiff also argues that the disputed items should have been removed because the addresses on the accounts did not match the P.O. Box number that Plaintiff supplied, and the date of birth on the CFC accounts was different. (Pl's MOL at 14.) However, Experian could not require an exact matching of all identifying information before it allows a credit item to be associated with a consumer's file. If Experian were to require 100 percent matching, a great deal of accurate credit information would typically not be displayed on credit reports. Similarly, some consumers could modify part of their identification in order to hide their accurate bad credit. (Scott Decl. ¶ 10.) The fact that Plaintiff uses a P.O. Box number in Bronx, New York does not mean that verified accounts under her name and social security number in Pennsylvania were inaccurate. Consumers may have current and past accounts associated with different addresses. The disclosure statements were sent to P.O. Box 634 because Plaintiff supplied that mailing address in her disputes (Ex. F), not because Experian independently knows where consumers reside.

Lastly, Plaintiff argues that Experian never contacted her during the reinvestigations to ask for a police report or government identification, which are required to block fraudulent information under FCRA 1681c-2(a). (Pl's MOL at 11.) However, the record shows that Experian repeatedly asked Plaintiff for these materials in connection with her disputes, and Ms. Jones testified that when she called Experian to dispute the Comcast account, an Experian agent "insisted" that she report the incident to the police and provide a report. (Ex. B, Jones Dep. 273:11-25; *see e.g.*, Exs. E, J, X, M.) Plaintiff did not supply these materials to Experian in response or even resend the 2005 police report that she claims to have sent Experian more than

5

five years before her disputes.[2]  Plaintiff cannot block verified accounts from her file simply by calling Experian and stating that they are not hers.  *See Anderson v. Trans Union*, 367 F.Supp.2d 1225, 1234-35 (W.D. Wisc. 2005) ("Requiring [CRAs] to accept and rely upon information in letters from consumers would be an invitation to fraud.")  Under the circumstances, it was not unreasonable for Experian to leave the verified accounts in Plaintiff's credit file.[3]

Plaintiff's attempt to distinguish *Ogbon* is unavailing.  In *Ogbon*, the plaintiff also claimed identity theft and demanded that Experian delete negative information from her credit file.  *Ogbon v. Beneficial Credit Servs.*, 2013 WL 1430467, at *2-4 (S.D.N.Y. Apr. 8, 2013).  Experian declined to reinvestigate because the identifying information that the plaintiff sent Experian, which included her learner's permit and utility bill, lacked proof of her Social Security number.  *Id*. at *4.  The court held that it was "entirely reasonable for Experian to decline to reinvestigate Ogbon's claim until it received such information." *Id*.  Plaintiff tries distinguishing the case because here, Experian began its reinvestigation, but the FCRA provides that a CRA may not only decline to initiate a reinvestigation, but it may also "terminate" a reinvestigation for

---

[2] While attempting to amend her admission that she never sent Experian a police report (Ex. T), Plaintiff conceded that she "did not provide a copy of the police report to Experian within the context of her disputes of fraudulent information appearing on her credit reports." (Reply Ex. 2, Pl's Second Supplemental Response to Experian's Request For Admissions.)

[3] Even after discovery, there is still uncertainty with respect to Plaintiff's identity, residential history, and alleged identity theft.  She has used only P.O. boxes for years.  Not until the eve of her deposition did she finally produce a copy of her driver's license (which displays a defunct P.O. Box) and she still has not produced a copy of her birth certificate, social security card, or passport, which she claims are missing.  She refused to produce a copy of her 2005 police report until a year after her case was filed, and it contains minimal information.  Her Amended Complaint, deposition testimony, Commerce Bank complaint, and bankruptcy filings all detail the alleged theft of her identity in 2005.  However, faced with the fact that a Philadelphia address appeared in her credit file as early as 2002, Plaintiff for the first time in her opposition papers states that "she was a victim of identity theft since 2002." (Pl's MOL at 1.) While it is immaterial when the alleged theft occurred, the fact that her identity, residential history, and the details of the alleged theft(s) still remain unclear after discovery supports the reasonableness of Experian's reinvestigations without any supporting documentation from her.

6

"failure by a consumer to provide sufficient information to investigate the disputed information." § 1681i(a)(3)(A).

### B. Plaintiff Has Not Shown Willful Noncompliance

A plaintiff may not recover statutory and punitive damages (which are the only damages claimed here) unless he or she proves that the credit reporting agency acted willfully. FCRA § 1681n. The Supreme Court has defined "willfulness" as knowingly and intentionally violating the FCRA or acting with "reckless disregard of a requirement of FCRA." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). In *Safeco*, the Supreme Court explained that a company does not act in reckless disregard of the FCRA unless the challenged practice was based on an "objectively unreasonable" interpretation of the FCRA. *Id.* at 70-71. Thus, Plaintiff must go farther here than proving that Experian's reinvestigations were unreasonable, she must also demonstrate that Experian's conduct was willful.

The record is devoid of any evidence of willful noncompliance, and Plaintiff cites no legal authority to support her argument that Experian's conduct was willful. In *McMillian*, the court explicitly noted that the plaintiff did not claim a willful violation of the FCRA, and the text that Plaintiff quotes does not pertain to a FCRA claim. *McMillian v. Experian*, 170 F.Supp.2d 278, 284 n. 6, 287 (D. Conn. 2001). Rather, the court was applying the standard for "malice" under a defamation cause of action, which considers whether the speaker acted with reckless disregard of a statement's truth or falsity. *Id.* at 287. That standard is not applicable here. Plaintiff also cites other cases that significantly differ from the facts alleged here because those plaintiffs submitted documentary proof to support their dispute, which the CRA failed to consider. *Gorman v. Experian*, 2008 WL 4934047, *7-8 (S.D.N.Y. Nov. 19, 2008); *Bradshaw v. BAC Home Loans Servicing*, 816 F. Supp. 2d 1066 (D. Or. 2011); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp.2d 1220 (D.N.M. 2006); *Saenz v. Trans Union*, 621 F. Supp. 2d 1074 (D. Or.

7

2007). Here, Plaintiff submitted no supporting documentation to Experian. The *Lambert* case is also distinguishable because the CRA repeatedly reported the item after being told by the creditor to remove it. *Lambert v. Beneficial Mortg. Corp.*, 2007 U.S. Dist. LEXIS 33119 at *16-19 (W.D. Wash. May 4, 2007). Lastly, the *Cushman* court declined to consider the plaintiff's willfulness claim. *Cushman v. Trans Union*, 115 F.3d 220 (3rd Cir. 1997).

Experian is entitled to summary judgment because Plaintiff proffered no evidence of willful noncompliance, and Plaintiff has not shown that Experian acted willfully. Under the circumstances, Experian's determination not to block the disputed accounts after considering information from the creditors who verified them, in the absence of any supporting materials from Plaintiff, cannot be considered an "objectively unreasonable" interpretation of the FCRA.

**II.  PLAINTIFF CONCEDES THAT EXPERIAN NEVER FURNISHED AN INACCURATE CREDIT REPORT TO ANY THIRD PARTY**

Plaintiff does not counter the fact that her claims fail because the disputed credit items were never reported to a third party. Like defamation, a claim under the FCRA requires publication to a third party, not just to the plaintiff alone. *See Fashakin v. Nextel Comms.*, No. 05-CV-3080, 2009 WL 790350, at *12 (E.D.N.Y. Mar. 25, 2009) ("Plaintiff has not alleged any such post-dispute disclosure, and therefore has failed to meet her burden under the FCRA."); *Casella v. Equifax*, 56 F.3d 469, 475 (2d Cir. 1995). Plaintiff has not produced any credit reports provided to third parties, but instead admitted that she has not applied for credit. *See* Pl's Rule 56.1 Statement No. 24. Without any evidence that Experian ever issued a consumer credit report containing the disputed items to a third party, there is no liability under the FCRA.

**III.  PLAINTIFF'S NEW CLAIM ALLEGING POST-SUIT VIOLATIONS IS BARRED AND FAILS AS A MATTER OF LAW**

For the first time, Plaintiff claims in her opposition papers that Experian violated the FCRA because "service of the complaint should have triggered an investigation." (Pl's MOL at

8

15.) Initially, this new claim should be dismissed because it is not alleged in the Amended Complaint and Plaintiff cannot allege new claims in opposition to summary judgment. *See Avillan v. Donahoe*, 483 Fed. Appx. 637, *1 (2d Cir. 2012). Nonetheless, the claim has no merit. Plaintiff cites no authority that filing a lawsuit commences a dispute under FCRA § 1681i(a) – it does not. Furthermore, Experian is not required to conduct a new investigation on the same entry once it already completes a reinvestigation and no additional information is provided. § 1681i(a)(3)(A); *see Whelan v. Trans Union*, 862 F. Supp. 824, 830 fn. 8 (E.D.N.Y. 1994). Thus, the claim should be dismissed.

## IV. PLAINTIFF LACKS ARTICLE III STANDING

Plaintiff does not dispute that Article III requires a concrete and *de facto* injury. Instead, Plaintiff first argues that a statutory violation of the FCRA is, in itself, an "actual injury to Plaintiff sufficient to confer Article III standing." (Pls' MOL at 16.) However, the cases that Plaintiff cites do not support her erroneous contention: *Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 770-73 (2000) (holding plaintiff as assignee had standing as to sue to redress a monetary injury to the United States); *Warth v. Seldin*, 422 U.S. 490, 501, 506-07 (1975) (holding that plaintiffs lacked standing despite alleged statutory violations and noting that "Art. III' s requirement remains: the plaintiff still must allege a distinct and palpable injury to himself"); *Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) (holding that plaintiff lacked standing because she failed to allege a sufficient nexus between her monetary injury and the challenged government action). Most egregiously, Plaintiff cited *Sierra Club* for the proposition that "Congress may 'broaden[] the categories of injury that may be alleged in support of standing,'" (Pl's MOL at 17), however the quote actually reads: "But broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Sierra Club v. Morton*, 405

9

U.S. 727, 738 (1972). Lastly, in *Havens*, the Court held that Congress, in expressly creating a private right of action to truthful information in housing, made the injury of receiving false information sufficient to convey standing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). However, this "informational standing" expressly conferred by statute is a narrow exception to the rule and has not been held applicable to the FCRA. *Cf. Am. Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 97-99 (D.D.C. 2000); *Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 499 (D.C. Cir. 1994). The Supreme Court has not recognized other exceptions but instead has consistently held that a private plaintiff must be injured apart from an alleged statutory violation in order to have Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).

Plaintiff additionally argues that actual damages are not required to obtain statutory and punitive damages. (Pl's MOL at 19.) However, § 1681n cannot properly be read to confer a cause of action to consumers who do not claim an actual injury. Rather, in keeping with the statute's text and purpose—as well as the need to interpret the statute to avoid serious constitutional difficulties—the FCRA is properly read to authorize recovery only by consumers who have suffered at least some minimal harm or injury because of inaccurate information in a credit report issued to a third-party. If the FCRA were read to permit actions on behalf of consumers who have suffered no concrete injury, it would be unconstitutional. *See Robins v. Spokeo, Inc.*, No. 10-CV-05306, 2011 WL 597867, at *1 (C.D. Cal. Jan. 27, 2011). Without an actual injury, Plaintiff's claims should be dismissed.[4]

---

[4] In an attempt to circumvent the constitutional requirement for standing, Plaintiff argues that while she does not claim actual damages, she did suffer them because she was "deterred from obtaining credit and housing along with emotional distress damages." (Pl's MOL at 16.) Plaintiff cannot argue these damages after she explicitly disclaimed actual damages and refused to provide any discovery concerning damages. (Ex. C, Pl's Rog Resp. Nos. 4, 5, 6, 22, 23, 24 & Pl's RFP Resp. Nos. 29, 46, 47, 48, 49, 50, 51, 52.) Nonetheless, Plaintiff did not proffer any

## CONCLUSION

For the foregoing reasons and those set forth in Experian's Motion for Summary Judgment, Experian respectfully requests that this Court grant summary judgment it its favor, dismiss Plaintiff's action in its entirety, and award Experian all other relief that the Court deems just and proper.

Dated:  New York, New York
        June 19, 2013

JONES DAY

By:  /s/ Joseph A. Strazzeri
Joseph A. Strazzeri (JS8414)
Briana R. Hulet
222 East 41st Street
New York, New York 10017
(212) 326-3939

Attorneys for Defendant
Experian Information Solutions, Inc.

---

(continued…)

evidence of such damages or show how they were proximately caused by the disputed credit items and not her other negative credit history. Moreover, Plaintiff cannot rely on her own conclusory statements and must prove that third parties learned of the derogatory information from Experian. *Casella v. Equifax*, 56 F.3d 469 (2d Cir. 1995). Therefore, these new allegations fail and should be disregarded.

11