UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————— x

KEISHA JONES,

    Plaintiff,

-against-                                                                                  11 Civ. 9136 (CM) (KNF)

EXPERIAN INFORMATION SOLUTIONS, INC.

    Defendant.

———————————————————————— x

## DECISION AND ORDER

Plaintiff, Keisha Jones ("Plaintiff") brings this action against Experian Information Solutions, Inc. ("Defendant" or "Experian") alleging Defendant violated the Fair Credit Reporting Act, as codified 15 U.S.C. § 1681, *et seq.* ("FCRA"). Plaintiff specifically claims that Defendant, a credit reporting agency ("CRA"), willfully failed to conduct a reasonable reinvestigation in violation of 15 U.S.C. §§ 1681i, 1681n. Defendant has moved for summary judgment. For the reasons set forth below, Defendant's motion is denied.

## Background

On January 20, 2011 Plaintiff called Defendant to dispute two credit items that were appearing on her Experian credit report. (Scott Depo. 31:8-18; Def. Exh. G). Defendant had been reporting that Plaintiff owed Central Financial Control ("CFC") balances of $540 and $260 for debts initially belonging to Hahnemann University Hospital. (*Id.*). Plaintiff contended that she never incurred these debts. (*Id.*). She insisted that her identity was stolen and the accounts were opened by the identity thieves. (*Id.*).

1

Defendant requires consumers to provide their name, social security number, date of birth and address to Experian before it would allow a consumer to dispute such an account. (Scott Depo. 124:7-12). Plaintiff did so. (*Id.*).

Defendant then sent CFC an electronic consumer dispute verification ("CDV") form requesting it verify the accounts. (Scott Depo. 37:5-12, Def. Exh. G). CFC responded by sending back the forms and verifying that the accounts had been opened by someone using Plaintiff's correct name and social security number, but with birth date of August 18, 1974. (Def. Exh. G). Plaintiff's actual date of birth is June 24, 1970. (Jones Depo. 24:9). Both the accounts listed an address of 523 W. Fisher Ave, Philadelphia, PA; Plaintiff resided in New York and used post office boxes in New York as her address. (Jones Depo., passim; Def. Exh. G). However, one of the forms returned by CFC stated that current address on file was for the account was the "Same" as the mailing address Plaintiff provided to Defendant at the time she made the dispute: P.O Box 634, Bronx, NY. (Def. Exh. G). The other form returned by CFC indicated the address on file was "Different" than the one Plaintiff provided. (Def. Exh. G).

On March 3, 2011 Defendant sent the results of its investigation to Plaintiff's mailing address in the Bronx. Defendant advised Plaintiff that it would not remove the disputed charges from the credit report. (Scott Depo. 54:25-55:3; Def. Exh. J, EXP98-119).

On November 18, 2011 Plaintiff called Defendant to dispute yet another item that was appearing on her credit report. (Scott Depo. 104:11-105:4). Comcast had reported $2,956 was past due and had been written off. (Def. Exh. D, EXP-1184). Plaintiff complained that someone had used her identifying information to open a Comcast account in her name without her consent. (Def Exh. N; Def. Exh. F, EXP1169).

2

Defendant mailed a CDV form to Comcast, informing them that Plaintiff disputed the account as fraudulent. (Def. Exh. N). Comcast returned the form, informing Experian that their account had a differently spelled first name for Plaintiff – Keshia instead of Keisha – and had address listed as 332 West Berkeley Street, Philadelphia, PA, not Plaintiff's address. (Def. Exh. N; Scott Depo. 106:3-14). Comcast indicated the date of birth and social security number were the same. (Def. Exh. N; Scott Depo. 106:3-14). Defendant again decided to keep the information on Plaintiff's credit report, sending her the notification of the results to her P.O. Box address in the Bronx on December 9, 2011. (Def. Exh. O).

On December 9, 2011 Plaintiff initiated this action, claiming that Defendant failed to conduct a "reasonable reinvestigation" as required by the FCRA in response to her disputes. Plaintiff is not seeking compensation for actual damages, for she suffered none. Since the time Plaintiff disputed these items, Defendant has not issued a consumer credit report to third parties, nor did Plaintiff apply for credit or authorize access to her credit file while the disputed items appeared there. (Rule 56.1 Statement ¶¶ 24-25). Instead Plaintiff seeks statutory and punitive damages under the FCRA.

Defendant has moved for summary judgment. Defendant argues that its reinvestigation complied with the FCRA as a matter of law, claiming it was not required to look further into the disputed accounts once they were verified by CFC and Comcast and because Plaintiff did not provide sufficient documentation. Defendant further argues that in order for Plaintiff to recover under the FCRA, Plaintiff must show that the disputed credit items were furnished to a third party. Finally, Defendant argues Plaintiff lacks Art. III standing, or fails to state a claim under the FCRA, because she is not seeking actual damages in this action.

## Discussion

### I. Standard for Summary Judgment

"A party may move for summary judgment [and] the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The initial burden is on the moving party to show that no genuine issue of material fact exists. *Kirby v. Yonkers Sch. Dist.*, 767 F.Supp.2d 452, 459 (S.D.N.Y.2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once such a showing has been made, the nonmoving party must present facts showing a genuine issue for trial. *See Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). "Genuine issues of material fact cannot be created by mere conclusory allegations; summary judgment is appropriate only when, 'after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party.'" *Marvel Entertainment, Inc. v. Kellytoy, Inc.*, 769 F.Supp.2d 520, 523 (S.D.N.Y.2011) (citing *Heublein v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993); *Matsushita Elec. Industr. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In reviewing the record, the district court must assess the evidence in the light most favorable to the non-moving party, resolve all ambiguities, and draw all reasonable inferences in its favor." *Clarke v. Aetna Life Ins. Co.*, 471 F.Supp.2d 463, 468–69 (S.D.N.Y.2007) (citing *Am. Cas. Co. v. Nordic Leasing, Inc.*, 42 F.3d 725, 728 (2d Cir.1994)).

4

## II.     Plaintiff Has Article III Standing

As a threshold matter, Plaintiff has Article III standing to bring her claim. Defendant contends that since Plaintiff only seeks statutory and punitive damages for Defendant's alleged violation, and does not seek actual, or compensatory, damages, that she fails the "injury in fact" prong of Article III standing. Defendant's contention is without merit, and this Court has jurisdiction over Plaintiff's suit.

The Supreme Court has held that a plaintiff has standing when (1) the plaintiff has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An "injury in fact" consists of "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations and quotation marks omitted). It is well established that the "actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing," *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation marks omitted), and that Congress may "define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Vt. Agency of Nat. Res. v. United States*, 529 U.S. 765, 773 (2000).

The Plaintiff is entitled to an accurate credit report. The FCRA provides that a CRA must conduct a "reasonable reinvestigation" if a consumer disputes an item on her credit report. 15 U.S.C. § 1681i(a)(1)(A). The FCRA further provides a consumer with a private right of action to enforce such right in the event a party "willfully fails to comply with any requirement" of the FCRA "with respect to any consumer." *Id.* § 1681n(a). These sections confer upon Plaintiff a statutory entitlement to a reasonable reinvestigation once she disputes an item on her credit

report. Defendant's alleged failure to fulfill its statutory obligations with respect to Plaintiff caused Plaintiff an injury in fact—she did not get the benefit of the reasonable reinvestigation into the accuracy of her credit report to which she was statutorily entitled. This is an actual, concrete injury which is particularized to Plaintiff. Plaintiff's injury may be redressed through statutory and punitive damages. She may have suffered no actual damages but her rights were violated and Congress has provided statutory damages for any such violation.

### I.   A Reasonable Jury Could Find Defendant Failed to Conduct a Reasonable Reinvestigation

Plaintiff claims Defendant failed to conduct a "reasonable reinvestigation" pursuant to 15 U.S.C. § 1681i. Defendant moves for summary judgment arguing that its reinvestigation was reasonable as a matter of law.

In relevant part, section 1681i(a)(1)(A) of FCRA provides:

> "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a *reasonable reinvestigation* to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer."

15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

Here Plaintiff directly disputed three items of information in her Experian credit file. This triggered Defendant's obligation to conduct a "reasonable reinvestigation." *Id.* Defendant, pursuant to 15 U.S.C. § 1681i(a)(2), promptly notified the "furnisher" of the information — in this case CFC and Comcast — that Plaintiff disputed the items. Although Defendant argues

6

about the duties the FCRA imposes on the furnisher, at issue is not whether CFC and Comcast complied with their statutory obligations, but whether Defendant did.

Courts evaluating whether a CRA failed to conduct a reasonable reinvestigation look to whether there were in fact inaccuracies in the credit report, because a "plaintiff asserting claims under § 1681i must demonstrate that the disputed information is inaccurate in order to prevail on allegations that a consumer reporting agency had failed to reasonably reinvestigate a disputed item." *Fashakin v. Nextel Communications*, No. 05-CV-3080 (RRM), 2009 WL 790350, (E.D.N.Y. March 25, 2009) (citing *Deandrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008)); *see also Okocha v. Trans Union LLC*, No. 08–CV–3107, 2011 WL 2837594 (E.D.N.Y. March 31, 2011), *aff'd* 488 Fed. Appx. 535 (2nd Cir. 2012). Here Plaintiff has established that some of the information contained in here disputed credit items were inaccurate: her birth date, the spelling of her name, and her address.

The parties do not agree about what steps CRA has to take to satisfy it statutory obligation of conducting a reasonable investigation. The Second Circuit has not directly addressed what constitutes a reasonable reinvestigation under section 1681i. However, other courts have, noting that, "the parameters of a reasonable investigation will . . . depend on the circumstances of a particular dispute." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 713 (3d Cir. 2010). These courts have held that "the reinvestigation required by section 1681i(a) demands more than (a) forwarding the dispute information onto the furnisher of information and (b) relying on the furnisher of information's response." *Gorman v. Experian Information Solutions, Inc.*, No. 07 CV 1846(RPP), 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008) (citing *Cushman v. TransUnion Corp.*, 115 F.3d 220, 225 (3rd Cir.1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 287 (7th Cir. 1994)); *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)).

"[T]he statutory responsibility imposed on the credit report agency 'must consist of something more than merely parroting information received from other sources.'" *Gorman*, 2008 WL 4934047, at *5 (quoting *Cushman*, 115 F.3d at 225).

"[I]n order to fulfill its obligation under § 1681i(a) a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." *Cushman*, 115 F.3d at 225 (quoting *Henson* 29 F.3d at 287) (internal quotation marks omitted). Courts have noted that a number of factors will determine the extent of the CRA's reinvestigation: "One of these [factors] is whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. A second factor is the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer." *Id.* (quoting *Henson* 29 F.3d at 287) (internal quotation marks omitted). Ultimately, it is up to the trier of fact to weigh these considerations in determining whether the CRA conducted a reasonable reinvestigation under section 1681i. *Id.*

Two Second Circuit cases relied upon by Defendant do not impose a lesser standard on CRAs. First, Experian cites *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 104 (2d Cir.1997), to support its claim that its reinvestigation of Plaintiff's dispute complied with the FCRA as a matter of law. However, my colleague, Judge Patterson, rejected this exact argument in *Gorman* (from this same Defendant), because "the facts are distinguishable in that the sole issue in *Podell* was whether notice was sent as required by section 1681i [and because] 'the consumer in *Podell* never took issue with the reasonableness of the scope of the consumer reporting agency's reinvestigation.'" *Gorman*, 2008 WL 4934047, at *5 (quoting *Cushman*, 115 F.3d at 224–25). Because the Second Circuit had no occasion to consider whether the CRA conducted a

8

reasonable investigation, the fact that the court noted such a reinvestigation "typically entails sending a Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have reported a disputed account" does not mean that such a reinvestigation will always be reasonable.

Defendant also relies on *Okacha v. Trans Union*, No. 08–CV–3107, 2011 WL 2837594 (E.D.N.Y. March 31, 2011), *aff'd* 488 Fed. Appx. 535 (2nd Cir. 2012), a case in the Eastern District of New York, which was summarily affirmed by the Second Circuit. In *Okacha* the district court concluded that under the circumstances of that case, Experian's investigation was "reasonable as a matter of law," as were the reinvestigations of two other CRAs. 2011 WL 2837594, at *7. First the *Okacha* court noted that the plaintiff failed to produce evidence that the accounts were reported inaccurately and that two of the alleged inaccuracies related to plaintiff's legal obligations to pay the debts and thus involved "questions of law that [the CRAs] could not have possibly resolved through a reinvestigation." *Id.* at *6. The court then found that, even had the accounts been inaccurate, the plaintiff "failed to produce any evidence indicating that [the CRAs] failed to discharge their duty to reinvestigate the disputes in a reasonable manner." *Id.* The CRAs in *Okacha*, upon being notified of the plaintiff's dispute, verified the information with the furnisher. *Id.* The CRAs then each "updated each account according to the information in received from the furnishers" and informed the plaintiff of the results of the reinvestigation. *Id.* The Second Circuit affirmed "for the reasons articulated by the district court in its well-reasoned order." 488 Fed. Appx. at 536.

Although simply updating the plaintiff's credit report with the verified information from the furnisher in *Okacha* was deemed reasonable "under the[] circumstances" there presented, *Okacha* does not stand for the proposition that Experian's process is reasonable as a matter of

9

law under all circumstances. Most importantly, there is no evidence in *Okacha* that the information provided by the furnisher did not match the consumer's personal information. Here there were discrepancies between the information given by the consumer and the information provided by the furnisher. That could well argue for further inquiry — especially where, as here, the consumer had allegedly been the victim of identity theft.

Given that Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information, a reasonable jury could find that Defendant's failed to conduct a reasonable reinvestigation. Defendant has not carried its burden, as the party moving for summary judgment, to show that there are no genuine issues of material facts or that it is entitled to judgment as a matter of law. Defendant has not offered evidence of what it did when it received information from the furnisher that did not conform to the information Plaintiff had provided to them. Defendant's representative conclusorily states in a declaration that "Experian agents reviewed the information from Plaintiff and [the furnisher], then processed the dispute in compliance with the FCRA." (Scott Decl. ¶¶ 19, 22), but there is no explanation of how Experian resolved the glaring discrepancies between what Plaintiff told them about her birth date, address and the spelling of her name, and what the furnishers provided. Additionally, Mr. Scott, Experian's witness admitted that he had no personal knowledge of the extent of investigation that those agents engaged in. (Scott Depo., 90:6–7). Therefore, a reasonable jury could conclude, given the discrepancies with Plaintiff's birth date, the spelling of her name, and address, that a further investigation was required, and that Defendant did not undertake such investigation.

Defendant also argues that Plaintiff failed to provide them with documentation substantiate her claim of identity theft. To the extent that Defendant requested this information during the course of its reinvestigation, or at the time Plaintiff disputed the accounts, it would

10

plainly be relevant to a jury's determination of Defendant's reasonableness. However, any such requests after Defendant's reinvestigation could not be relevant to the inquiry of whether the reinvestigation itself was reasonable. Further, the fact that Defendant is statutorily permitted to terminate its reinvestigation pursuant to 15 U.S.C. § 1681i(a)(3)(A) if a consumer fails "to provide sufficient information to investigate the disputed information" is irrelevant. Defendant did not notify Plaintiff that it was terminating the reinvestigation because she failed to provide sufficient information. *See* 15 U.S.C. § 1681i(a)(3)(B). Here the Defendant conducted a reinvestigation and notified Plaintiff, pursuant to § 1681i(a)(6), that it would not remove the disputed information from her file. (Rule 56.1 Statement ¶¶ 10, 19).

## II.     Plaintiff May Bring Her Claim Under 15 U.S.C. § 1681n

Plaintiff only seeks statutory and punitive damages, not compensatory damages. Thus, Plaintiff's cause of action under the FCRA arises under 15 U.S.C. § 1681n which requires that Defendant "willfully fail[ed] to comply with" its obligations under the FCRA. Section 1681n allows for punitive and statutory damages, whereas section 1681*o* allows a consumer to recover only compensatory damages for a party's negligent failure to comply with the FCRA. 15 U.S.C. §§ 1681n, 1681*o*.

A reasonable jury could conclude Defendant willfully failed to comply with its FCRA obligations. The United States Supreme Court has held that a party "willfully fails to comply" with the FCRA, as used in 15 U.S.C. § 1681n, when it recklessly disregards the FCRA's requirements. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). Therefore, Plaintiff's burden at trial is to establish Defendant recklessly disregarded its statutory obligation to conduct a reasonable reinvestigation pursuant to section 1681i.

Defendant argues that Plaintiff cannot establish that Defendant recklessly disregarded the FCRA because she cannot show that Defendant's interpretation of the FCRA was "objectively unreasonable." In *Safeco*, the Supreme Court explained that "Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Id.* at 70 n.20. The Court concluded the *Safeco* defendants had not acted in reckless disregard of the FCRA because although their reading of the statute was "erroneous, [it] was not objectively unreasonable." *Id.* at 69. The Court noted that the defendants reading of the FCRA provision at issue had "a foundation in the statutory text" and that "no court of appeals had spoken on the issue." *Id.* at 69–70.

Defendant again relies on *Podell v. Citicorp Diners Club, Inc.*, where the Second Circuit stated that a CRA's "'reinvestigation' typically entails sending a Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have reported a disputed account." 112 F.3d 98, 101. However, as discussed above, other courts have concluded (including in a case to which Defendant was a party) that *Podell* is not controlling on the reasonableness of a CRA's reinvestigation, because that was not the issue before the Second Circuit. *See Cushman v. TransUnion Corp.*, 115 F.3d 220, 224–25 (3rd Cir.1997); *Gorman v. Experian Information Solutions, Inc.*, No. 07 CV 1846(RPP), 2008 WL 4934047, at *5 (S.D.N.Y. Nov. 19, 2008). Therefore, Defendant's reliance on *Podell* to conclude its statutory duty is satisfied by transmitting a consumer dispute verification form to the furnisher of the information and relaying the information to the consumer is not objectively reasonable.

Since Defendant has introduced no evidence of what its investigation consisted other than sending a dispute verification form to the furnisher, a reasonable jury could conclude Defendant

12

recklessly disregarded its statutory duty to conduct a reasonable investigation — especially in light of the discrepancies between Plaintiff's information and the information provided by the furnishers.

Additionally, contrary to Defendant's contention, a plaintiff can sue under section 1681n without proving actual damages. Under the plain text of the statute and controlling Second Circuit precedent statutory and punitive damages are not limited to situations where the Plaintiff suffers actual damages. The statute reads:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1)(A) any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000; . . .
>
> (2) such amount of punitive damages as the court may allow; and
>
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. 1681n(a) (emphasis added). Based on this plain text the Second Circuit has concluded that "punitive damages may be available even where a plaintiff has sustained no actual damages." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995); *see also Northrop v. Hoffman of Simsbury, Inc.*, 12 Fed.Appx. 44, 50 (2d Cir. 2001). Therefore, "Even if Plaintiff is not entitled to 'actual damages,' [s]he may still be entitled to punitive damages based on sufficient proof that Experian willfully violated various provisions of the FCRA." *Gorman*, 2008 WL 4934047, at *5. Similarly, section 1681n(1)(A) states that Plaintiff may elect between actual or statutory damages, and in no way implies Plaintiff must be suffer actual damages in order to seek statutory damages.

Finally, Defendant's contention that Plaintiff has no cause of action under the FCRA since the disputed credit items were not provided to a third party is similarly without merit. The cases cited by Defendant only relate to whether a FCRA plaintiff may recover actual damages in the form of pain and suffering absent the CRA disclosing the disputed items to a third party. *See, e.g.*, *Casella*, 56 F.3d at 475. Courts have held that actual damages, in the form of pain and suffering, are not available unless the CRA improperly discloses the credit report. *Id.* However, since Plaintiff does not seek actual damages caused by pain and suffering, Defendant is not entitled to summary judgment on this ground.

### Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is denied.

Dated: November 12, 2013

_____
U.S.D.J.

[BY ECF TO ALL PARTIES]